IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

GLOBAL INNOVATIVE CONCEPTS, LLC; A.I.
FIRST ALABAMA, LLC; ALLEN KILGORE,   CASE NO.

    Plaintiffs,
v.

STATE OF FLORIDA, DIVISION OF
EMERGENCY MANAGEMENT,

    Defendant.
_____/

## COMPLAINT

Plaintiffs, GLOBAL INNOVATIVE CONCEPTS, LLC, A.I. FIRST ALABAMA, LLC; and ALLEN KILGORE, file this Complaint against Defendant, STATE OF FLORIDA, DIVISION OF EMERGENCY MANAGEMENT, and state:

## PARTIES, VENUE, & JURISDICTION

1. This is an action for damages seeking in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000), exclusive of costs, interest and attorneys' fees.

2. This Court has federal diversity jurisdiction pursuant to 28 U.S.C. §1332, in that Plaintiffs and Defendant are of diverse citizenship, and the amount in controversy, exclusive of interest and costs, is in excess of $100,000.00.

3. Plaintiff, Global Innovative Concepts, LLC ("Global"), is an Alabama corporation.

4. Plaintiff, A.I. First Alabama, LLC ("AI First"), is an Alabama corporation.

5. Plaintiff, Allen Kilgore, is a resident of Alabama.

6. Defendant, State of Florida, Division of Emergency Management ("FDEM") is headquartered and located in Leon County, Florida.

1

7. In addition to diversity and threshold jurisdiction, this Court has jurisdiction over this action because the parties contractually consented to the jurisdiction and venue of the United States District Court for the Eastern District of North Carolina.

## GENERAL ALLEGATIONS

8. At all relevant times regarding the matters of this Complaint, Global was an agent of Essential Health Solutions, Inc. and Essential Diagnostics, LLC (collectively "Essential"). Essential has assigned all causes of action in this matter to Global. The Assignment of Claims is attached here as **Exhibit "A."**

9. At all relevant times regarding the matters of this Complaint, Allen Kilgore was an agent of Essential.

### Purchase Order #1

10. On or about March 22, 2020, FDEM executed a purchase order with Essential for the purchase of 200,000 COVID viral sample collection kits for $2,200,000. Essential's purchase order form was executed by Kevin Guthrie on behalf of Jared Moskowitz, Director of FDEM. This purchase order is attached here as **Exhibit "B,"** and will be referred to as "PO#1."

11. Section 13 of the signed PO#1 states:

> "This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of North Carolina, excluding that body of law known as choice of law, and shall be binding upon the parties hereto in the United States and worldwide. All disputes with respect to this Agreement shall be brought and heard either in the North Carolina state courts located in Wake County, North Carolina, or the federal district court for the Eastern District of North Carolina located in Raleigh, North Carolina. The parties to this Agreement each consent to the in personal jurisdiction and venue of such courts." Ex. B, sect. 13.

12. Section 1 of the signed PO#1 states:

> "These Terms and Conditions of Sale and the Purchase Agreement (collectively, the "Agreement") are entered into between Buyer and

Essential Diagnostics, LLC ("Seller"), and govern the sale of all Seller's products (the "Products") to Buyer. Any terms proposed by Buyer, which add to, vary from, or conflict with the terms of the Agreement shall be void, and the terms of the Agreement shall govern." Ex. B, sect. 1.

13. Section 6 of the signed PO#1 states, "Accepted purchase orders cannot be cancelled or rescheduled." Ex. B, sect. 6.

14. Section 15 of the signed PO#1 states:

"This Agreement and any acknowledgement or acceptance of a purchase order by Seller constitute the complete and exclusive statement of the agreement between the parties regarding the subject matter hereof and supersede all proposals, oral or written, and all other communications between the parties relating to the subject matter herein." Ex. B, sect. 13.

15. Pursuant to PO#1, the total purchase amount was due within forty-five (45) days upon delivery of the products. Ex. B, p. 1.

16. Immediately after FDEM executed PO#1, Essential, working together with its agents, Global and Mr. Kilgore, invested significant time, efforts, and costs to procure the COVID test kits under PO#1.

17. On April 3, 2020, Essential, working together with its agents, Global and Mr. Kilgore, delivered the 200,000 test kits under PO#1 to FDEM in Tallahassee, Florida. Upon delivery, FDEM expressed immense gratitude and appreciation to Essential, Global, and Mr. Kilgore for their swift efforts. FDEM stated that it was unable to obtain these test kits so quickly from any other sources.

18. On April 5, 2020, Jared Rosenstein, Legal Affairs Director of FDEM, confirmed to Global, Essential, Mr. Kilgore, other FDEM personnel, and other State of Florida health department personnel, that the 200,000 PO#1 test kits had been received, had been vetted and cleared by Florida State University Laboratories, and had been vetted and cleared by "FLDOH."

This confirmation email is attached as **Exhibit "C."**[1]

19. Pursuant to the terms of PO#1, FDEM was obligated to pay the total purchase amount of $2,200,000 within 45 days of delivery. To date, FDEM has failed to pay $2,200,000 under PO#1.

20. FDEM signed PO#1. The products were delivered. FDEM failed to pay for PO#1. Any purported terms proposed by FDEM, which added to, varied from, or conflicted with the terms of PO#1 were void. Ex. B, sect. 1. PO#1 superseded all proposals, oral or written, and all other communications between the parties relating to PO#1. Ex. B, sect. 13.

21. Essential and its agents did not accept any additional or alternative terms and conditions proposed by FDEM that contradicted or conflicted with the terms and conditions signed in writing by FDEM for PO#1. To the extent that FDEM signed terms and conditions that differed or conflicted from its own policies, procedures, or regulations, FDEM expressly and voluntarily waived such policies, procedures, or regulations.

Purchase Order #2

22. Within a few days of signing PO#1, on March 24, 2020, FDEM reached out to Allen Kilgore to request additional COVID test kits from Essential.

23. Allen Kilgore is a principal and officer of Global. Allen Kilgore is also a principal and officer of A.I. First Alabama, LLC ("AI First"). At all relevant times regarding the matters of this Complaint, Mr. Kilgore, Global, and AI First, working together, were agents of Essential.

24. In response to FDEM's request for additional test kits, Mr. Kilgore, working together with Essential as Essential's agent, offered to provide an additional 400,000 COVID viral

---

[1] Within this email, Mr. Rosenstein mistakenly notes that the State of Florida had wired "2.2m" for PO#1. The mistaken nature of this note is reflected and confirmed in the allegations and exhibits related to PO#2.

4

sample collection kits for $4,400,000.

25. On or about March 24, 2020, Mr. Kilgore, working together with Essential as Essential's agent, sent FDEM a purchase order and terms similar to the ones FDEM had just executed under PO#1. Under this proposed purchase order, Mr. Kilgore and Essential requested that FDEM pay half of the total invoice up front ($2,200,000 of the total $4,400,000), with the remainder due within forty-five (45) days of delivery of the test kits.

26. On the same day, FDEM responded and confirmed the agreement to purchase 400,000 additional test kits pending the payment of 50% of the invoice - $2,200,000. The aforementioned communications and confirmations between FDEM and Mr. Kilgore, along with the proposed purchase order, are attached here collectively as **Exhibit "D,"** and this transaction will be referred to as "PO#2."

27. Immediately thereafter, FDEM issued a signed letter to Essential, on FDEM letterhead (containing the names of the Governor of Florida and the Director of FDEM in the letterhead), confirming (a) the agreement to purchase 400,000 additional test kits totaling $4,400,000, (b) the immediate payment of $2,200,000 for PO#2, and (c) the remaining balance of $2,200,000 to be processed and paid within forty-five (45) days of delivery. This letter is attached as **Exhibit "E."**

28. The following day, on March 25, 2020, FDEM wired $2,200,000 to Essential for the 50% immediate payment under PO#2. The payment confirmation is attached here as **Exhibit "F."**

29. At this point, the parties had a contract for PO#2, for the purchase of 400,000 additional test kits in the amount of $4,400,000. There was an offer, there were proposed terms and conditions, and there was an acceptance through written communication and payment of 50%

5

of the total amount due.

30. Additionally, the proposed purchase order sent to FDEM under PO#2 (the offer) contained the same exact terms and conditions discussed above in paragraphs 11, 12, 13, and 14:

   a. "Any terms proposed by Buyer, which add to, vary from, or conflict with the terms of the Agreement shall be void, and the terms of the Agreement shall govern." Ex. D, Purchase Order, sect. 1.

   b. "Accepted purchase orders cannot be cancelled or rescheduled." Ex. D, Purchase Order, sect. 6.

   c. "This Agreement and any acknowledgement or acceptance of a purchase order by Seller constitute the complete and exclusive statement of the agreement between the parties regarding the subject matter hereof and supersede all proposals, oral or written, and all other communications between the parties relating to the subject matter herein." Ex. D, Purchase Order, sect. 13.

31. Immediately after the 50% payment, Essential, Mr. Kilgore, Global, and AI First, invested significant time, efforts, and costs to procure the COVID test kits under PO#2. To secure the test kits for PO#2, Essential and its agents were required to pay costs up front. On or about April 16 and 17, 2020, the first 200,000 of 400,000 test kits for PO#2 were being prepared and loaded on a plane for shipment to the United States. Within a few days, the remaining 200,000 of 400,000 test kits for PO#2 were being prepared and loaded on a plane for shipment to the United States. All test kits arrived in the United States and were ready to be delivered to FDEM in Tallahassee, Florida.

32. At or around the same time, Stephanie Twomey, Agency Clerk of FDEM, attempted to terminate PO#2 based upon FDEM's purported convenience. At a later point, FDEM also inconsistently alleged that the test kits previously delivered under PO#1 were "defective" in some way. As noted above, on April 5, 2020, at least 10 days earlier, FDEM had already confirmed that the PO#1 test kits were <u>vetted</u> and <u>cleared</u> by Florida State University Laboratories, and were

vetted and cleared by "FLDOH." *See* Ex. C.

33. Subsequent to the delivery of test kits under PO#1, Jared Rosenstein, Legal Affairs Director of FDEM, also confirmed to Essential, Global, and Mr. Kilgore that he had contacted other States, such as Utah, and verified that such States were successfully using these same test kits for their intended purposes. In addition, several labs in the State of Florida were using the PO#1 test kits and were using the same type of test kits to administer COVID testing.

34. In response to the attempted termination and claims of product deficiencies, Essential, Global, and Mr. Kilgore offered FDEM any and all discussion necessary to alleviate any concerns. In addition, Essential, Global, and Mr. Kilgore provided confirmation to FDEM of specifically identified labs in Florida that were administering these COVID test kits, had the capacity to use the PO#2 test kits, and would accept the PO#2 test kits.

35. During this time period, FDEM communicated to Essential, Global, and Mr. Kilgore that it would provide the "necessary documents" to support its claims of product deficiencies. FDEM never provided such documentation. In addition, FDEM did not pursue any remedies under the product warranties for the alleged deficiencies.

36. Ultimately, FDEM refused to accept delivery of the 400,000 test kits under PO#2. To date, FDEM has refused to pay the remaining $2,200,000 owed under PO#2 (after paying the 50% deposit). When FDEM refused to accept delivery of PO#2, Essential and its agents maintained availability of the test kits in a storage facility in North Carolina.

37. Pursuant to product regulations for these COVID test kits, if they were not used within a certain time period, the products must be destroyed.

38. FDEM accepted PO#2 through written confirmation and partial payment. The products were ready and offered to be delivered. FDEM refused to accept delivery and failed to

7

pay the remaining balance for PO#2. Any purported terms proposed by FDEM, which added to, varied from, or conflicted with the terms of PO#2 were void. Ex. D, sect. 1. PO#2 superseded all proposals, oral or written, and all other communications between the parties relating to PO#2. Ex. D, sect. 13.

Additional Allegations

39. Essential, along with its agents, exhausted significant costs, work, and effort to procure the test kits, as ordered by FDEM. Essential and its agents were able to secure a much-needed product during the peak of COVID test demands, and they did so in reliance on FDEM's promises to uphold its end of the bargains. As a result of FDEM's failure to pay, Essential and its agents have suffered damages.

40. Pursuant to contract law and the Uniform Commercial Code, PO#1 and PO#2 were valid, binding agreements, on the terms set forth by Essential and its agents, that were accepted by FDEM through signature (PO#1) and through written confirmation and partial payment (PO#2).

41. Essential, along with its agents, performed all of their duties and obligations under PO#1 and PO#2, to the extent possible, and/or that was not prevented or hindered by FDEM. At all times, Essential and its agents remained willing and able to deliver the additional 400,000 test kits under PO#2.

42. On or about March 25, 2021, and April 18, 2022, Essential, and its agents on behalf of Essential, sent written demand letters to FDEM, c/o Stephanie Stachowicz, Esq. – FDEM in-house counsel, notifying FDEM of the legal disputes and requesting payment of the funds owed. FDEM has failed to pay.

43. In total, FDEM contracted for the purchase of 600,000 test kits in the amount of $6,600,000. To date, FDEM has only paid $2,200,000, which was the 50% upfront payment under

PO#2.

44. All conditions precedent to the maintenance of this action have been performed, excused, or waived.

45. Plaintiffs have retained the law firms of Rhine Law Firm, P.C., and Morgan & Morgan, P.A., to prosecute their interests in this matter, and are obligated to pay these firms a reasonable attorneys' fee for their services.

## Count I
### (Global's Breach of Contract claim under PO#1)

46. Plaintiff Global realleges, incorporates, and asserts by reference the allegations set forth in Paragraphs 1 through 21, and 39 through 45, above.

47. This is a cause of action by Global, as assignee of Essential, against FDEM for breach of contract under PO#1.

48. FDEM's signature and execution of the purchase order on or about March 22, 2020, created a valid, binding agreement under PO#1 for the purchase of 200,000 test kits for $2,200,000.

49. Upon delivery of the 200,000 test kits on April 3, 2020, FDEM was obligated to pay $2,200,000 under PO#1 within forty-five (45) days.

50. FDEM materially breached the PO#1 contract by failing to pay the funds owed under PO#1.

51. As a result of FDEM's breach, Essential, and Global as Essential's assignee of legal claims, have suffered damages.

WHEREFORE, Plaintiff, Global, demands judgment against Defendant, FDEM, for damages, costs, interest, and such other and further relief as the Court deems just and proper.

## Count II
### (Global's Breach of Contract claim under PO#2)

9

Case 5:23-cv-00069-FL   Document 1   Filed 02/15/23   Page 9 of 16

52. Plaintiff Global realleges, incorporates, and asserts by reference the allegations set forth in Paragraphs 1 through 7, and 22 through 45, above.

53. This is a cause of action by Global, as assignee of Essential, against FDEM for breach of contract under PO#2.

54. Essential and its agent's proposed purchase order, FDEM's confirmation emails, FDEM's confirmation letter, and FDEM's wired 50% down payment on March 25, 2020, created a valid, binding agreement under PO#2 for the purchase of 400,000 test kits for $4,400,000.

55. Essential and its agents attempted to complete performance of the PO#2 agreement by delivering the additional 400,000 test kits.

56. FDEM materially breached the PO#2 agreement by refusing to accept delivery of the test kits and by failing to pay the remaining balance of $2,200,000 owed under PO#2.

57. As a result of FDEM's breach, Essential, and Global as Essential's assignee of legal claims, have suffered damages.

WHEREFORE, Plaintiff, Global, demands judgment against Defendant, FDEM, for damages, costs, interest, and such other and further relief as the Court deems just and proper.

## Count III
### (AI First's Breach of Contract claim under PO#2)

58. Plaintiff AI First realleges, incorporates, and asserts by reference the allegations set forth in Paragraphs 1 through 7, and 22 through 45, above.

59. This is a cause of action in the alternative to Count II.

60. Upon information and belief, FDEM has suggested that if it entered into an agreement under PO#2, then FDEM's agreement was with AI First.

61. This is a cause of action by AI First against FDEM for breach of contract under PO#2.

62. AI First's proposed terms and conditions, FDEM's confirmation emails, FDEM's confirmation letter, and FDEM's wired 50% down payment on March 25, 2020, created a valid, binding agreement under PO#2 between FDEM and AI First for the purchase of 400,000 test kits for $4,400,000.

63. AI First and its agents attempted to complete performance of the PO#2 agreement by delivering the additional 400,000 test kits.

64. FDEM materially breached the PO#2 agreement by refusing to accept delivery of the test kits and failing to pay the remaining balance of $2,200,000 owed under PO#2.

65. As a result of FDEM's breach, AI First has suffered damages.

WHEREFORE, Plaintiff, AI First, demands judgment against Defendant, FDEM, for damages, costs, interest, and such other and further relief as the Court deems just and proper.

## Count IV
### (Kilgore's Breach of Contract claim under PO#2)

66. Plaintiff Mr. Kilgore realleges, incorporates, and asserts by reference the allegations set forth in Paragraphs 1 through 7, and 22 through 45, above.

67. This is a cause of action in the alternative to Counts II and III.

68. Upon information and belief, FDEM has suggested that if it entered into an agreement under PO#2, then FDEM's agreement was with Mr. Kilgore.

69. This is a cause of action by Mr. Kilgore against FDEM for breach of contract under PO#2.

70. Mr. Kilgore's proposed terms and conditions, FDEM's confirmation emails, FDEM's confirmation letter, and FDEM's wired 50% down payment on March 25, 2020, created a valid, binding agreement under PO#2 between FDEM and Mr. Kilgore for the purchase of 400,000 test kits for $4,400,000.

71. Mr. Kilgore attempted to complete performance of the PO#2 agreement by delivering the additional 400,000 test kits.

72. FDEM materially breached the PO#2 agreement by refusing to accept delivery of the test kits and failing to pay the remaining balance of $2,200,000 owed under PO#2.

73. As a result of FDEM's breach, Mr. Kilgore has suffered damages.

WHEREFORE, Plaintiff, Mr. Kilgore, demands judgment against Defendant, FDEM, for damages, costs, interest, and such other and further relief as the Court deems just and proper.

### Count V
### (Global's Breach of Contract claim for PO#2 under FDEM's purported terms and conditions)

74. Plaintiff Global realleges, incorporates, and asserts by reference the allegations set forth in Paragraphs 1 through 7, and 22 through 45, above.

75. This is a cause of action by Global, as assignee of Essential, against FDEM for breach of contract under PO#2.

76. This is a cause of action in the alternative to Counts II, III, and IV.

77. Essential and its agent's proposed purchase order, FDEM's confirmation emails, FDEM's confirmation letter, and FDEM's wired 50% down payment on March 25, 2020, created a valid, binding agreement under PO#2 for the purchase of 400,000 test kits for $4,400,000.

78. Essential and its agents attempted to complete performance of the PO#2 agreement by delivering the additional 400,000 test kits.

79. Upon information and belief, FDEM has suggested that its own alternative terms and conditions apply to PO#2. FDEM, however, has been inconsistent regarding which terms and conditions it claims should apply. Therefore, Essential and Global are without knowledge of such purported terms and are unable to include such purported terms within this pleading.

12

80. FDEM stated that its attempted termination of PO#2 was for convenience.

81. For PO#2, Essential and its agents incurred significant costs up front to procure the 400,000 test kits to the point of delivery. When FDEM refused delivery of the test kits, Essential and its agents incurred additional costs for storage of the test kits. At a minimum, FDEM must pay such costs.

82. At minimum, FDEM materially breached the PO#2 agreement by failing to pay the costs incurred by Essential and its agents under PO#2.

83. As a result of FDEM's breach, Essential, and Global as Essential's assignee of legal claims, have suffered damages.

WHEREFORE, Plaintiff, Global, demands judgment against Defendant, FDEM, for damages, costs, interest, and such other and further relief as the Court deems just and proper.

## Count VI
### (AI First's Breach of Contract claim for PO#2 under FDEM's purported terms and conditions)

84. Plaintiff AI First realleges, incorporates, and asserts by reference the allegations set forth in Paragraphs 1 through 7, and 22 through 45, above.

85. This is a cause of action in the alternative to Counts II, III, IV, and V.

86. Upon information and belief, FDEM has suggested that if it entered into an agreement under PO#2, then FDEM's agreement was with AI First.

87. This is a cause of action by AI First against FDEM for breach of contract under PO#2.

88. AI First's proposed terms and conditions, FDEM's confirmation emails, FDEM's confirmation letter, and FDEM's wired 50% down payment on March 25, 2020, created a valid, binding agreement under PO#2 between FDEM and AI First for the purchase of 400,000 test kits

13

for $4,400,000.

89. AI First and its agents attempted to complete performance of the PO#2 agreement by delivering the additional 400,000 test kits.

90. Upon information and belief, FDEM has suggested that its own alternative terms and conditions apply to PO#2. FDEM, however, has been inconsistent regarding which terms and conditions it claims should apply. Therefore, Essential and AI First are without knowledge of such purported terms and are unable to include such purported terms within this pleading.

91. FDEM stated that its attempted termination of PO#2 was for convenience.

92. For PO#2, AI First and its agents incurred significant costs up front to procure the 400,000 test kits to the point of delivery. When FDEM refused delivery of the test kits, AI First and its agents incurred additional costs for storage of the test kits. At a minimum, FDEM must pay such costs.

93. At minimum, FDEM materially breached the PO#2 agreement by failing to pay the costs incurred by AI First and its agents under PO#2.

94. As a result of FDEM's breach, AI First has suffered damages.

WHEREFORE, Plaintiff, AI First, demands judgment against Defendant, FDEM, for damages, costs, interest, and such other and further relief as the Court deems just and proper.

<u>**Count VII**</u>
**(Kilgore's Breach of Contract claim for PO#2
under FDEM's purported terms and conditions)**

95. Plaintiff Kilgore realleges, incorporates, and asserts by reference the allegations set forth in Paragraphs 1 through 7, and 22 through 45, above.

96. This is a cause of action in the alternative to Counts II, III, IV, V, and VI.

97. Upon information and belief, FDEM has suggested that if it entered into an

14

agreement under PO#2, then FDEM's agreement was with Mr. Kilgore.

98. This is a cause of action by Mr. Kilgore against FDEM for breach of contract under PO#2.

99. Mr. Kilgore's proposed terms and conditions, FDEM's confirmation emails, FDEM's confirmation letter, and FDEM's wired 50% down payment on March 25, 2020, created a valid, binding agreement under PO#2 between FDEM and Kilgore for the purchase of 400,000 test kits for $4,400,000.

100. Mr. Kilgore attempted to complete performance of the PO#2 agreement by delivering the additional 400,000 test kits.

101. Upon information and belief, FDEM has suggested that its own alternative terms and conditions apply to PO#2. FDEM, however, has been inconsistent regarding which terms and conditions it claims should apply. Therefore, Essential and Mr. Kilgore are without knowledge of such purported terms and are unable to include such purported terms within this pleading.

102. FDEM stated that its attempted termination of PO#2 was for convenience.

103. For PO#2, Mr. Kilgore and his agents incurred significant costs up front to procure the 400,000 test kits to the point of delivery. When FDEM refused delivery of the test kits, Mr. Kilgore and his agents incurred additional costs for storage of the test kits. At a minimum, FDEM must pay such costs.

104. At minimum, FDEM materially breached the PO#2 agreement by failing to pay the costs incurred by Mr. Kilgore and his agents under PO#2.

105. As a result of FDEM's breach, Mr. Kilgore has suffered damages.

WHEREFORE, Plaintiff, Mr. Kilgore, demands judgment against Defendant, FDEM, for damages, costs, interest, and such other and further relief as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: February 15, 2023      Respectfully submitted,

    */s/ Joel R. Rhine*
    Joel R. Rhine
    Martin A. Ramey
    Ruth A. Sheehan
    RHINE LAW FIRM, P.C.
    1612 Military Cutoff Road, Suite 300,
    Wilmington, NC 28403
    Telephone: (910) 772-9960
    Facsimile: (910) 772-9062
    Phone: (910) 772-9960
    jrr@rhinelawfirm.com
    mjr@rhinelawfirm.com
    ras@rhinelawfirm.com

    Thomas S. Cargill
    MORGAN & MORGAN, P.A.
    BUSINESS TRIAL GROUP
    20 N. Orange Ave, Suite 1600
    Orlando, FL 32801
    Telephone: (407) 245-3518
    tcargill@forthepeople.com
    vwhitaker@forthepeople.com