**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

GLOBAL INNOVATIVE CONCEPTS, LLC;
A.I. FIRST ALABAMA, LLC; and
ALLEN KILGORE,

     Plaintiffs,

v.                              CASE NO.: 5:23-cv-00069-FL

STATE OF FLORIDA, DIVISION
OF EMERGENCY MANAGEMENT,

     Defendant.

_____/

**MEMORANDUM IN SUPPORT OF DEFENDANT,
STATE OF FLORIDA DIVISION OF EMERGENCY MANAGEMENT'S,
<u>MOTION TO DISMISS OR TRANSFER VENUE</u>**

Defendant, State of Florida, Division of Emergency Management ("FDEM"), moves to dismiss the complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), and for improper venue, Fed. R. Civ. P. 12(b)(3). FDEM further asserts that it is entitled to sovereign immunity from suit in this court under the Eleventh Amendment and moves to dismiss on that basis. In the alternative, FDEM moves to transfer venue based on the common law doctrine of *forum non conveniens*. *See* 28 U.S.C. § 1404. FDEM files this memorandum in support of its motion pursuant to Local Rule 7.1(e) and 7.2.

## I.   NATURE OF THE CASE

This case involves a contractual dispute between Florida's Division of Emergency Management ("FDEM"), the state agency responsible for responding to both natural and manmade disasters in Florida, and Essential Diagnostics, LLC, ("Essential") a non-party to this case. Compl. ¶ 8. These contracts were allegedly entered into in March 2020, nearly three years ago in

the height of the global COVID-19 pandemic. Plaintiff, Global Innovative Concepts, LLC ("Global") purports to stand in Essential's shoes as an assignee.[1] Compl. ¶¶ 8, 47, 53. Global alleges that FDEM breached two contracts to purchase COVID-19 sample collection kits. *See* Compl. ¶ 43. The remaining Plaintiffs, AI First Alabama, LLC ("AI First") and Allen Kilgore, bring causes of action in the alternative, alleging that they were the true parties in interest to the contracts in question. For the reasons set forth below, the Complaint should be dismissed, or alternatively, venue should be transferred.

## II. STATEMENT OF THE CASE AND SUMMARY OF THE ARGUMENT

For the purposes of this motion,[2] FDEM does not dispute that it entered into two contracts with Essential in 2020 for the purchase of 600,000 COVID test kits for a total of $6.6 million. FDEM does not dispute that it accepted delivery of 200,000 test kits or that it wired $2.2 million to Essential. FDEM further does not dispute that it cancelled the second contract for the remaining 400,000 test kits after discovering that many of the sample collection kits in the first shipment were leaking and that Florida laboratories refusing to accept them (rendering them useless to FDEM). However, FDEM vehemently denies that it agreed—indeed ,that it was even legally able to agree—to Essential's proposed terms and conditions, *see* Compl. ¶ 10, instead of adhering to Florida procurement law which requires Florida state agencies to include Form PUR 1000

---

[1] This federal suit also represents Global's second bite at the apple. Global previously filed an action against FDEM in Florida state court alleging breaches of the same purchase orders at issue in this case. *See* **Exhibit A** (state court complaint). The state court granted FDEM's motion to dismiss that action without prejudice. *See* **Exhibit B** (order of dismissal). Instead of filing an amended complaint, Global voluntarily dismissed that action. *See* **Exhibit C** (notice of voluntary dismissal). Instead of filing this suit in federal district court in Northern Florida where the state court action was filed, Global has filed it in this Court.

[2] FDEM does make arguments in the alternative. Specifically, FDEM argues that PO#2 was an unenforceable unilateral contract.

"General Contract Conditions" that apply to all state contracts. *See* Fla. Admin. Code R. 60A-1.002(7) ("All formal solicitations issued by an agency shall include the standard 'General Contract Conditions' Form PUR 1000 . . . and these conditions shall be part of all resulting contracts."). As explained below, Plaintiffs have not attached all of the relevant documents demonstrating the parties' entire agreement. Rather, they have culled cherry-picked emails or portions of attachments to emails in attempt to frame their Complaint to avoid dismissal. Their efforts still fall woefully short.

As to PO#1, Plaintiffs allege that FDEM entered in a contract to purchase 200,000 test kits for $2.2 million. Compl. ¶ 10. The Purchase Orders attached to the Complaint as Exhibits B and C are not—and do not purport to be—the final agreed upon terms. Plaintiffs attached what they allege are the terms of the parties' final agreement. What they failed to include was the State of Florida's purchase order form which contains additional terms and conditions to which Essential assented. FDEM has attached that form as **Exhibit D**.[3] This one-page document contains the comment: "Vendor is not in [My Florida Marketplace].[4] We are issuing this paper PO in order to secure the supplies. *A formal PO will also be issued through MFMP once the vendor is fully registered.*" Ex. D (emphasis added). The document also references additional "terms and conditions" that are not attached to the Complaint:

---

[3] The court may consider attachments to the motion to dismiss that are "integral to and explicitly relied on in the complaint." *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (collecting cases).

[4] This document was attached as an exhibit to Global's state court complaint. *See* Ex. A at 17.

| Purchase Order Type: | | P Card Order: | NA |
|---|---|---|---|
| Terms and Conditions: | MFMP, Federal Clauses | Additional Item Info: | |
| Approval: | | Total | $2,200,000.00 |
| **Comments** | | | |
| Vendor is not in MFMP. We are issuing this paper PO in order to secure the supplies. | | | |
| A formal PO will also be issued through MFMP once the vendor is fully registered. | | | |

*Id.*

MyFloridaMarketplace is an online portal and serves as "the state's eProcurement system that connects state agencies with vendors."[5] Vendors are required to register with MFMP before entering into commodities contracts with the State. *See* Fla. Admin. Code R. 60A-1.033. And they are required to consent to the MyFloridaMarketplace Terms and Conditions before their registration can be processed. *Id.* Also attached to this motion as **Exhibit E** is a printout from MyFloridaMarketplace indicating that Corey DeHaven of Essential registered with MyFloridaMarketplace on March 25, 2020—three days after PO#1 was executed. *Compare* Compl. ¶ 10 *and* Compl. Ex. B *with* Exhibit E. Attached as **Exhibit F** are the MyFloridaMarketplace Terms and Conditions and the PUR1000, both of which Essential expressly agreed to when it registered with MyFloridaMarketplace.

Under UCC's battle of the forms, N.C. Gen. Stat. § 25-2-207, the State of Florida's standard contract terms—not Essential's terms and conditions—govern PO#1 because Essential expressly agreed to be bound by them. *See* Ex. E. Alternatively, a binding contract was formed as to PO#1 only on the terms of the competing forms that are not in conflict. *See Dassault Falcon Jet Corp. v. Oberflex, Inc.*, 909 F. Supp. 345, 352 (M.D.N.C. 1995) ("The choice of law provisions

---

[5]

https://www.dms.myflorida.com/business_operations/state_purchasing/myfloridamarketplace/mfmp_vendors

constitute a material alteration to the contract, and neither party accepted the other's offer to include the clause. Therefore, the choice of law provisions did not become part of the contract between the parties." (footnote omitted)). As the Fourth Circuit has explained:

> Where clauses on confirming forms sent by both parties conflict each party must be assumed to object to a clause of the other conflicting with one on the confirmation sent by himself. As a result the requirement that there be notice of objection which is found in subsection (2) is satisfied and the conflicting terms do not become a part of the contract. The contract then consists of the terms originally expressly agreed to . . . terms on which the confirmations agree, and terms supplied by this Act.

*Brewster of Lynchburg, Inc. v. Dial Corp.*, 33 F.3d 355, 362–63 (4th Cir. 1994). Under this scenario, neither Essential's nor FDEM's preferred venue-selection clause was incorporated into the parties' final agreement. Either way, venue is improper in North Carolina.

As to PO#2, each of the three Plaintiffs brings two counts. Global, again, alleges that it brings Counts II and V as an assignee of Essential, while Kilgore (in Count III) and AI First (in Count IV) allege that they directly contracted with FDEM. Additionally, each Plaintiff brings a count in the alternative alleging a breach of contract under "FDEM's purported terms and conditions" (Counts V–VII). However, each Plaintiff alleges that they are "without knowledge of such purported terms and are unable to include such purported terms within this pleading." *See, e.g.*, Compl. ¶ 101. Attached as **Exhibit F** are the publicly available terms and conditions that FDEM believes are controlling. As explained further below, and as shown by the exhibits, these terms and conditions designate the Northern District of Florida as the appropriate venue and further provide that the commodities contracts are not assignable. Moreover, the only basis for the allegation that FDEM contracted with anyone other than Essential is that "upon information and belief, FDEM has suggested that if it entered into an agreement under PO#2, then FDEM's agreement was with [the respective plaintiff]." *See, e.g.*, Compl. ¶ 97. Any allegations that FDEM

contracted with Kilgore or AI First are directly contradicted by the exhibits to the Complaint and claims by those parties should be dismissed.

Although Global purports to bring this action as an assignee of Essential, the controlling contract language contains an explicit and unambiguous anti-assignment provision. The Complaint shows that Global is not acting as a mere assignee of the right to receive payment. Rather, Global and Essential appear to have been working hand-in-hand with Global performing duties that were contractually required to be performed by Essential. Regardless, without FDEM's consent, the assignment is invalid, and Global's claims cannot proceed. This is a substantive deficiency that cannot be cured by repleading and thus the Court should dismiss those claims with prejudice.

To the extent Essential's terms and conditions apply to PO#2, that purchase order was an illusory contract that gave Essential the option, but not the obligation, of accepting FDEM's offer by shipping test kits. There is no allegation in the complaint that Essential (or anyone acting on its behalf) accepted FDEM's offer by shipping test kits. Accordingly, if Essential's terms and conditions control, PO#2 was an unenforceable unilateral contract.

Regardless of which terms apply to the purchase orders in question, venue is improper in North Carolina. FDEM is not a resident of North Carolina and none of the events giving rise to Plaintiffs' claims occurred in North Carolina. Even an enforceable venue-section clause cannot cure a defect in venue. Furthermore, even if the Court determines that venue is proper due to Essential's venue selection clause, it should nevertheless transfer this case to the Northern District of Florida for the convenience of the parties and the witnesses under the doctrine of forum non conveniens. Moreover, Florida has not waived sovereign immunity from suit in foreign states. FDEM, as an arm of the State of Florida, is entitled to sovereign immunity from suit in federal courts outside the State of Florida requiring dismissal of the Complaint.

The Court should dismiss for lack of personal jurisdiction, for improper venue, and/or for failure to state a claim, and because the 11th Amendment bars this suit. Alternatively, the Court should transfer venue to the Northern District of Florida, Tallahassee Division.

### III. NORTH CAROLINA'S LONG-ARM STATUTE DOES NOT AUTHORIZE THE EXERCISE OF PERSONAL JURISDICTION OVER FDEM

Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), federal district courts have personal jurisdiction only over defendants "who [are] subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." North Carolina's long-arm statute prescribes the circumstances in which a court has jurisdiction over a nonresident defendant. N.C. Gen. Stat. § 1-75.4. Personal jurisdiction may be exercised over a nonresident defendant who are "engaged in substantial activity within th[e] State" at the time of service." N.C. Gen. Stat. § 1-75.4(1)(d).

Under subsection (4) a court may exercise jurisdiction over a defendant whose actions *outside* North Carolina cause injury *inside* North Carolina only if at the time of the injury:

> a.      Solicitation or services activities were carried on within this State *by or on behalf of the defendant*;
>
> b.      Products, materials or thing processed, serviced or manufactured by the defendant were used or consumed, within this State in the ordinary course of trade; or
>
> c.      Unsolicited bulk commercial electronic mail was sent into or within this State by the defendant . . .

The State of Florida is not engaged in substantial business activity in North Carolina. Nor has it engaged in any sales or solicitation activities and nothing manufactured by the State of Florida is used in the ordinary course of trade in North Carolina. North Carolina's long-arm statute cannot drag the State of Florida into a federal court in this state.

And even if the long-arm statute provides for personal jurisdiction, the Due Process Clause does not. *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) ("A federal district court may exercise personal jurisdiction over a foreign corporation only if: (1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment.").

To determine if an out-of-state Defendant has sufficient minimum contacts with North Carolina, courts apply a five-factor balancing test. The five factors courts consider are: "(1) quantity of the contacts between the defendant and the forum state, (2) quality and nature of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience of the parties." *Baker v. Lanier Marine Liquidators, Inc.*, 654 S.E.2d 41, 45 (N.C. Ct. App. 2007) (quoting *Cameron–Brown Co. v. Daves*, 83 N.C.App. 281, 284, 350 S.E.2d 111, 114 (1986)); *see also dmarcian, Inc. v. dmarcian Europe BV*, 60 F.4th 119 (4th Cir. 2023) (quoting *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020)) ("To determine whether the Due Process Clause is satisfied, courts consider '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'"). Although "a single contract may be a sufficient basis for the exercise of in personam jurisdiction if it has a substantial connection with this State" a contract "alone does not automatically establish" personal jurisdiction. *Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. 361, 367, 348 S.E.2d 782, 786 (1986). On balance, these factors overwhelmingly suggest that personal jurisdiction over FDEM is lacking in this case.

The Complaint alleges the existence of only one contract with a North Carolina entity nearly three years ago. FDEM has no other alleged contractual dealings with entities in North Carolina. FDEM does not sell any goods into North Carolina and as a matter of practice does not enter into purchase orders with choice-of law or choice-of-venue provisions designating foreign states' laws or forums. When FDEM does contract with North Carolina it does so only during emergencies and on a limited basis. These contacts are irregular and do not subject FDEM to personal jurisdiction in North Carolina.

The third factor, "the source and connection of the cause of action to the contracts," weighs heavily against finding personal jurisdiction. The only connection this case has to North Carolina is that Essential—a non-party—was once located there. Essential has allegedly assigned its rights and the Plaintiffs are Alabama residents with no apparent connection to North Carolina. And importantly, FDEM disputes that the parties' agreement is governed by North Carolina law and that venue is proper. As to Counts V–VII, Plaintiffs do not even allege the existence of a binding forum-selection or choice-of-law provision. The interest of the forum state includes the consistent application of North Carolina law and providing a local forum for resolving legal disputes. But these interests are minimal where, as here, Plaintiffs are not North Carolina residents and the cause of action has no apparent connection to North Carolina. The final factor, convenience of the parties, also weighs against finding personal jurisdiction here. As explained further in section V, the most convenient forum for resolving this dispute is the Northern District of Florida.

The Court should dismiss for lack of personal jurisdiction.

## IV.  THE EASTERN DISTRICT OF NORTH CAROLINA IS NOT A PROPER FORUM

The Court should dismiss because the Eastern District of North Carolina is not a proper forum, or alternatively it should transfer to the case to the Northern District of Florida, Tallahassee

Division, pursuant to 28 U.S.C. § 1406. *See also* 28 U.S.C. § 1391. "Ample authority exists that the burden of establishing venue is on the plaintiff." *Collision Commc'ns, Inc. v. Nokia Sols. & Networks Oy*, 485 F. Supp. 3d 282, 298 (D. Mass. 2020) (cleaned up). To determine if a federal case has been filed in an appropriate forum, courts apply 28 USC § 1391, which "govern[s] the venue of all civil actions brought in district courts of the United States." That section provides that:

> A civil action may be brought in
>
>> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>>
>> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>>
>> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

§ 1391(b). Where none of these conditions are satisfied, a court must either dismiss or transfer the case to an appropriate forum. 28 USC § 1406(a). None of these conditions are satisfied here.

First, FDEM is a state agency located in Tallahassee and its residence for venue purposes is the Northern District of Tallahassee. *See* Compl. ¶ 6 (alleging that FDEM's headquarters is in Tallahassee, Florida); *see also* Fla. Const., Art. II, § 2 (establishing the seat of Florida State government in "the City of Tallahassee, in Leon County, where the offices of the governor . . . shall be maintained"); and § 14.2016(1), Fla. Stat (establishing the Division of Emergency Management within the Executive Office of the Governor). The Eastern District of North Carolina is not "a district where any defendant resides," so that cannot be the basis for establishing venue.

Second, North Carolina has only a tangential connection to the contract dispute at issue in this case. Global, Kilgore, and AI First are all residents of Alabama. Compl. ¶¶ 3–5. None of the

Plaintiffs are residents of North Carolina and the Complaint contains no allegations that the Plaintiffs have any connection to North Carolina whatsoever. The only connection to North Carolina is that Essential Diagnostics, LLC, who assigned its rights in this matter to Global, was located there. The test kits at issue are not alleged to have been imported through North Carolina nor are they alleged to be located in North Carolina currently or at any other time. *Cf. Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 56 (2013) ("The first two paragraphs of § 1391(b) define the preferred judicial districts for venue in a typical case.").

Finally, because FDEM resides in Tallahassee, Florida, this action could have been brought in the Northern District of Florida, so subdivision (3) does not apply. Thus, Plaintiffs cannot establish that venue is proper and the Court should dismiss the case or transfer venue to the Northern District of Florida, Tallahassee Division pursuant to 28 USC § 1404(a).

Plaintiffs allege that venue is proper pursuant to a venue selection clause in the Essential terms and conditions. Compl. ¶ 7. As explained above, this was not part of the parties' final agreement. *See infra* § I. In Counts IV–VII, Plaintiffs do not even allege that Essential's terms and conditions apply. They allege that "Florida's purported terms and conditions" control, and those terms and conditions contain a valid forum selection clause designating Florida as the proper venue. But even if this venue-selection clause *was* contained in the parties' final agreement, venue is still improper. "The structure of the federal venue provisions confirms that they alone define whether venue exists in a given forum." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 56 (2013).

The Supreme Court considered a similar set of facts in *Atlantic Marine Construction Co. v. United State District Court for the Western District of Texas*. *Id.* There, Atlantic Marine entered into a contract with J-Crew containing a forum selection clause designating the Eastern District of

Virginia as the proper forum. *Id.* at 53. J-Crew sued in a different district and Atlantic Marine moved to dismiss for improper venue and alternatively to transfer venue arguing that § 1404 was the proper mechanism to enforce a forum-selection clause. *Id.* The Court held that "[w]hether venue is 'wrong' or 'improper' depends *exclusively* on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." *Id.* at 55 (emphasis added). Similarly, the Fourth Circuit has held that to survive a motion to dismiss for improper venue, the Plaintiff must have filed in a district court that is "*both* a proper venue under 28 U.S.C. § 1391 (2012) *and* a permissible venue under the forum selection clause in the contract between the parties." *Devil's Advocate, LLC v. Grynberg Petroleum Co.*, 588 Fed. App'x. 264 (4th Cir. 2014) (emphasis added).

In summary, venue is improper in the Eastern District of North Carolina. As to Counts I–IV, FDEM disputes that the parties' agreement contains an enforceable forum selection clause and none of the events giving rise to Plaintiff's claims occurred in this district. As to Counts V–VII, Plaintiffs allege that PO#2 is controlled by "Florida's purported terms and conditions" which designated Florida as the proper venue and controlling law. Even if a valid venue-selection clause designating this district was contained in the parties' agreement, venue is improper. None of the three conditions in § 1391 are satisfied here: FDEM is not a resident of North Carolina; none of the events giving rise to Plaintiff's claims occurred in North Carolina; and there is a district in which this action may be brought—the United States District Court for the Northern District of Florida. As such, this court must dismiss or transfer.

## V. THE COURT SHOULD TRANSFER VENUE TO THE NORTHERN DISTRICT OF FLORIDA

"Forum non conveniens is the common law doctrine enabling a court to dismiss a case when a foreign forum is the more appropriate venue based on a range of convenience-related factors."

*Whitaker v. Monroe Staffing Services, LLC*, 42 F.4th 200, 207 (4th Cir. 2022) (citing *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007)). This doctrine has been codified at 18 U.S.C. § 1404(a), which provides that

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

Should the Court find that personal jurisdiction exists and venue is proper, it should nevertheless transfer venue under § 1404. However, the Court is also free to consider a forum non conveniens transfer before determining whether it has personal jurisdiction over the parties. *Whitaker*, 42 F.4th at 207 ("district courts need not conclusively establish their jurisdiction before dismissing a case on forum non conveniens grounds."); *Jenkins v. Albuquerque Lonestar Freightliner, LLC*, 464 F. Supp. 2d 491, 494 (E.D.N.C. 2006) ("[T]he Fourth Circuit has held that transfers can be made under section 1406(a) even if venue (as here) is proper in the transferor court.") (citing *Porter v. Groat*, 840 F.2d 255, 257 (4th Cir.1988)). As one court observed,

> In ruling on a motion for transfer, this Court applies an eleven factor test which considers the following issues:
>
> 1. The plaintiff's initial choice of forum;
> 2. The residence of the parties;
> 3. The relative ease of access of proof;
> 4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;
> 5. The possibility of a view;
> 6. The enforceability of a judgment, if obtained;
> 7. The relative advantages and obstacles to a fair trial;
> 8. Other practical problems that make a trial easy, expeditious, and inexpensive;
> 9. The administrative difficulties of court congestion;
> 10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and
> 11. The avoidance of unnecessary problems with conflict of laws.

*Hardee's Food Sys., Inc. v. Rosenblatt*, 44 F. Supp. 2d 767, 770 (E.D.N.C. 1998); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Collins v. Straight, Inc.*, 748 F.2d 916, 921–22 (4th Cir.1984); *Jenkins v. Albuquerque Lonestar Freightliner, LLC*, 464 F. Supp. 2d 491, 493–94 (E.D.N.C. 2006).

Ordinarily, "a district court considering a § 1404(a) motion (or a forum non conveniens motion) must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). The Court must "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.*; *see also Datasouth Computer Corp. v. Three Dimensional Techs., Inc.*, 719 F. Supp. 446, 451 (W.D.N.C. 1989) ("The combination and weight of factors requisite to a given result cannot be cataloged."). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atlantic Marine*, 571 U.S. at 62 (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)). Where there is an enforceable forum-selection clause, only the public interest factors are relevant to the court's decision; private interest factors should not be considered. *Id.* at 64.

The public interest factors include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at *62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981)). The balance of these factors weighs in favor of transferring venue to the Northern District of Florida.

First, "the administrative difficulties flowing from court congestion" should weigh in neither direction. This factor is hard to quantify, and publicly available data does not help. The Administrative Office of the U.S. Courts publishes data on District Court case loads.[6] However, due to a large multi-district litigation, the statistics for the North District of Florida are not reflective of the court's case load.[7] The undersigned counsel practice regularly in the Northern District of Florida and have not experienced unusual delays in having cases resolved.

Second, Plaintiffs allege (but FDEM disputes) that North Carolina law governs Counts I–IV. Compl. ¶¶ 8, 11. However, "[t]here is nothing particular or exceptional about North Carolina contract law which would suggest that [another federal district] court would be any less able to apply it than this Court." *Golden Corral Franchising Sys., Inc. v. GC of Vineland, LLC*, 5:19-CV-255-BO, 2020 WL 1312863, at *3 (E.D.N.C. Mar. 17, 2020). Moreover, in Counts V–VII, Plaintiffs allege that "FDEM's purported terms and conditions" govern. As shown by Exhibits A–C, under these provisions, Florida law controls. Additionally, this case arises under the Uniform Commercial Code and Florida law is nearly if not perfectly identical to North Carolina law in this regard. North Carolina may be the home of North Carolina law, but this does not mean the judges in the Northern District of Florida "would be any less able to apply it than this Court." *Golden Corral*, 2020 WL 1312863, at *3. At best, this factor is neutral as (at least) three of the seven counts are governed by Florida law. However, the court should also consider the fact that Florida courts are familiar with the Florida State Government and its agencies and may have particular localized knowledge that will assist in their resolution of this case.

---

[6] *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2022.pdf
[7] *See* The Wall Street Journal, 3M Military Earplugs Blamed for Hearing Loss in Largest Set of U.S. Suits (April 9, 2021) *available at* https://www.wsj.com/articles/3m-military-earplugs-blamed-for-hearing-loss-in-largest-set-of-u-s-suits-11617969601?mod=article_inline

Finally, the "the local interest in having localized controversies decided at home" is particularly high in this case. This factor weighs heavily in favor of a transfer. *See Golden Corral*, 2020 WL 1312863, at *3 ("As concerns the local interest factor, Courts have determined that litigation should take place in the federal judicial district or division with the closest relationship to the operative events."). FDEM is a Florida state agency and as argued below, is entitled to sovereign immunity from suit in North Carolina courts. Most, if not all, non-party witnesses are located in Florida. The test kits at issue have either already been delivered to Florida or were to be delivered to Florida, thus the majority of the physical evidence is likely located in Florida. Plaintiffs are all residents of Alabama, so given the geographic proximity to Florida, specifically the Northern District of Florida that includes the Florida Panhandle, it is likely a far more convenient venue for Plaintiffs as well. Should this case remain before this Court and ultimately proceed to trial, State of Florida employees will be required to travel approximately 600 miles from Tallahassee to Raleigh at a great public expense and spend significant time away from their jobs in the process. Such inconvenience and expense to the parties is hardly justified when the only tie this dispute has to North Carolina a very tenuous one: that Essential, who has allegedly assigned its rights to Global, was based in North Carolina back in 2020 when the contracts in question were executed. As every other tie is to North Florida, this factor tips the balance in favor of transferring venue.

Even assuming there was a valid forum-selection clause in the parties' agreement, the Court should nevertheless transfer venue to the Northern District of Florida under the doctrine of forum non conveniens. Where an agreement between the parties includes a valid forum selection clause, "the court must consider the convenience of the contractual forum, the fairness of a transfer in light of the forum-selection clause, and the parties' relative bargaining power." *Versus Evil LLC*

*v. PNC Bank, Nat'l Ass'n*, 2020 WL 2112155, at *3 (D. Md. May 4, 2020) (marks omitted). As one court in this district has explained:

> The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways. First, the plaintiff's choice of forum merits no weight. Second, private-interest factors weigh entirely in favor of the preselected forum. A district court may consider arguments about public-interest factors only.

*Generation Companies, LLC v. Holiday Hosp. Franchising, LLC*, 5:15-CV-220-FL, 2015 WL 7306448, at *9 (E.D.N.C. Nov. 19, 2015) (quoting *Atlantic Marine* (cleaned up)).

Another Court addressed a similar set of facts in *Nacco Materials Handling Group, Inc. v. Lilly Co.* 4:11-CV-28-D, 2011 WL 2119097, at *3 (E.D.N.C. May 25, 2011). In that case the Plaintiff (d/b/a "Yale") sued Lilly for copyright infringement after Lilly accessed Yale's propriety information through its website. The website contained a license agreement that users had to consent to before they could access the site. The license agreement designated the Eastern District of North Carolina as the proper forum and Yale sued in this district. *Id.* at *2. The defendant, Lilly, was a Tennessee company and had no offices or staff located in North Carolina and had no ongoing contracts here. *Id.* Lilly argued in part that it was not bound by the forum selection clause because Yale could not establish that Lilly saw or agreed to the license agreement containing the forum selection clause. Plaintiffs have not asserted that FDEM affirmatively knew and consented to the forum selection clause here.

The court addressed only Lilly's arguments as to venue. *Id.* at *3 ("Personal jurisdiction is typically determined before venue. However, when sound justification exists for doing so, a court may consider venue first."). As the Court explained:

> Plaintiff's choice of forum is ordinarily accorded considerable weight, but that weight is lessened when the conduct giving rise to the complaint did not occur in the forum. . . . An agreement as to the appropriate forum, if such an agreement exists, is a factor for the court's consideration, but it is not dispositive.

*Id.* at 3.

The court noted that the events giving rise to the copyright claim at issue occurred in Tennessee and the servers for Yale's website were located outside of North Carolina. This meant that most of the evidence and witnesses would be located outside of North Carolina as well. Because of this the court would be without power to compel testimony from non-party witnesses. *Id.* (citing 15 Charles Alan Wright *et al.*, Federal Practice & Procedure § 3851 (3d ed.2007)). The Court recognized that Yale had alleged the existence of an enforceable forum-selection clause, but also acknowledged that even assuming Lilly agreed to the forum selection clause (an issue that is hotly contested), *this agreement is not dispositive.*" *Id.* (emphasis added). Lilly was susceptible to suit in Tennessee, so a transfer would not evade justice. *Id.* at *4 ("Lilly admits to such jurisdiction in the Western District of Tennessee."). The Court rejected Yale's argument that because it had brought claims under North Carolina law, North Carolina was the most appropriate forum explaining that Lilly (like Global in this case) also brought claims under the laws of other states, so this factor was not to be given significant weight. *Id.* at *3. Ultimately, the court found that "in light of the entire record and for the convenience of parties and witnesses, and in the interest of justice, transfer [wa]s appropriate." *Id.*[8]

The Court should find that, as in *Nacco*, even assuming a valid forum-selection clause was part of the parties' agreement, the convenience of the parties and witnesses and the interest of justice will be best served by transferring venue to the Northern District of Florida, Tallahassee Division.

## VI.    THE COMPLAINT IS BARRED BY SOVEREIGN IMMUNITY

---

[8] The court held, in the alternative, that transfer was appropriate under § 1406. *Id.*

Plaintiffs are Alabama residents suing an instrumentality of the State of Florida. "The Eleventh Amendment makes explicit reference to the States' immunity from suits 'commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" *Alden v. Maine*, 527 U.S. 706, 712–13 (1999) (quoting U.S. Const., Amdt. 11). Florida has not waived its immunity from suit in federal courts and nothing in Essential's terms and conditions can be reasonably construed as a waiver of that immunity. *See* § 768.28(18), Fla. Stat. (expressly disclaiming any waiver of immunity for suit in federal courts). Because FDEM, as an agency of the state, is entitled to immunity not just from judgment but from suit altogether, the Complaint should be dismissed with prejudice.

"'An integral component' of the States' sovereignty [is] 'their immunity from private suits.'" *Hyatt*, 139 S. Ct. at 1493. A State's "immunity encompasses not merely whether it may be sued, but *where* it may be sued." *Beckham v. Nat'l R.R. Passenger Corp.*, 569 F. Supp. 2d 542, 550 (D. Md. 2008) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) (emphasis in *Pennhurst*)). Courts within this circuit agree that when a state "waive[s] its immunity and consents to be sued in its own courts, this does not constitute a consent to be sued in a federal court." *S. Ry. Co. v. Query*, 21 F.2d 333, 344 (E.D.S.C. 1927) (citing *Smith v. Reeves*, 178 U.S. 436 (1900)); *see also Beckham*, 569 F. Supp. 2d at 550. Moreover, for a state's action "to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit *in federal court*." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (emphasis in original). A waiver of sovereign immunity must be unequivocal and any doubt must be resolved in favor of the state. *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) ("[W]e will find waiver only where stated by the most express language or by

such overwhelming implications from the text as [will] leave no room for any other reasonable construction." (marks omitted)).

The Supreme Court recognized Florida governmental agencies' Eleventh Amendment immunity from suit in non-Florida federal courts in *Florida Department of Health & Rehabilitation Services v. Florida Nursing Home Association*. 450 U.S. 147, 150 (1981) (per curiam). In that case, a group of nursing homes sued the state agency that oversaw Florida's Medicaid program in federal court seeking past-due payments. *Id.* at 149–150. The nursing homes argued that by entering into the Medicaid program and in its contracts with the nursing homes the state had agreed to "recognize and abide by all State and Federal Laws, Regulations, and Guidelines applicable to participation in, and administration of, the Title XIX Medicaid Program." *Id.* The court found that this did not constitute a waiver of the state's sovereign immunity from suit in federal court. *Id.* ("[T]he fact that the Department agreed explicitly to obey federal law in administering the program can hardly be deemed an express waiver of Eleventh Amendment immunity.").

The State of Florida has a judicially created waiver of sovereign immunity for breach of express written contract. Under that rule, "[w]hen the State contracts with a private entity, then 'the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract.'" *Univ. of Florida Bd. of Trustees v. Rojas*, 351 So. 3d 1167, 1170 (Fla. 1st DCA 2022), *reh'g denied* (Dec. 27, 2022) (quoting *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984). But "for waiver-by-contract, there must be an express, written agreement that is legislatively authorized (that is, the state entity had statutory authority to enter

the contract, thereby waiving sovereign immunity and binding the State)." *Id.* (citing *Pan-Am*, 471 So. 2d at 6).[9]

Here, although the State of Florida has waived sovereign immunity from suit for breach of express contract, it has not consented to suit in federal court outside the State of Florida. Therefore the 11th Amendment protects FDEM from this action in federal court, and the Complaint must be dismissed.

## VII. THE ASSIGNMENT OF RIGHTS FROM ESSENTIAL TO GLOBAL WAS INEFFECTIVE

Global fails to state a claim in Count I (breach of PO#1), Count II (breach of PO#2), and Count V (Breach of PO#2 under FDEM's purported terms and condition) because the assignment of rights from Essential to Global was invalid. Global brings this action as an assignee of Essential Health Solutions, Inc., and Essential Diagnostics, LLC ("Essential"). Compl. ¶ 8. FDEM did not have a contract with Global. Through an assignment of benefits dated April 6, 2022, *see* Compl. Ex. A, Essential assigned its legal claims against FDEM to Global. But this assignment was invalid because FDEM's contract with Essential contained an explicit anti-assignment provision.

This case involves a battle of the forms. As explained above, FDEM and Essential entered into two purchase agreements on the terms stated in the PUR 1000 and MyFloridaMarketplace terms and conditions.[10] The terms of both Purchase Orders, as modified by the My Florida

---

[9] Similarly, under North Carolina law, "when the State has the authority to enter into a contract and it does so voluntarily, 'the State implicitly consents to be sued for damages on the contract in the event it breaches the contract.'" *Wray v. City of Greensboro*, 787 S.E.2d 433, 436 (N.C. Ct. App. 2016) (quoting *Smith v. State*, 289 N.C. 303, 320 (1976)).

[10] A court may rely on documents attached to a motion to dismiss when ruling on the motion if the document is "integral to and explicitly relied on in the complaint and . . . the plaintiffs do not challenge its authenticity." *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (collecting cases). "[F]or the document to be considered, the plaintiff's claims must turn on, or otherwise be based on, the contents of the document." *Brentzel v. Fairfax Transfer & Storage,*

Marketplace standard terms and conditions, provide that Essential was not permitted to subcontract work without FDEM's written consent and was prohibited from assigning its duties and obligations under the contract.

**Section 7. Subcontractors and Assignments.**

**A.   Subcontractors.**
The Contractor shall not subcontract any work under the Purchase Order without the prior written consent of the Agency.  The Contractor is fully responsible for satisfactory completion of all subcontracted work.

**B.   Assignment.**
The Contractor shall not sell, assign or transfer any of its rights, duties or obligations under the Purchase Order without the prior written consent of the Agency. In the event of any assignment, the Contractor remains secondarily liable for performance of the Purchase Order, unless the Agency expressly waives such secondary liability. The Agency may assign the Purchase Order with prior written notice to the Contractor.

Ex. F at 6. Yet Global alleges Essential did exactly that. Compl. ¶ 8 ("Essential has assigned all causes of action in this matter to Global.") (citing Exhibit A).

Under Florida law,[11] "[c]ontract rights can be assigned unless they involve obligations of a personal nature or there is some public policy against the assignment, or such assignment is specifically prohibited by the contract." *New Holland, Inc. v. Trunk*, 579 So. 2d 215, 217 (Fla. 5th DCA 1991) (citation omitted). Here, the contract contains a provision specifically prohibiting the assignment of the contractor's "rights, duties[,] or obligations," under the contract. Ex. B at 6. The assignment was therefore ineffective and Global does not have standing to pursue breach of contract claims against FDEM. *Cf. Cibran Enterprises, Inc. v. BP Products N. Am., Inc.*, 365 F. Supp. 2d 1241, 1251 (S.D. Fla. 2005) ("As the . . . assignment to [Plaintiff] was ineffective, [Plaintiff] lacks standing to sue for breach.").

---

*Inc.*, 21-1025, 2021 WL 6138286, at *2 (4th Cir. Dec. 29, 2021); *see also Goines v. Valley Cmty. Services Bd.*, 822 F.3d 159, 165 (4th Cir. 2016).

[11] Florida law applies here despite a choice of law provision in the Terms and Condition of Sale. *See* Compl., Ex. B at 4 (section 13). The MFMP Terms and Conditions supersede the conflicting choice of law provision. *See* Ex. B at 7 (section 9.B) ("The laws of the State of Florida shall govern the Purchase Order.").

Typically under Florida law, a party to a contract may assign its right to sue for breach despite an anti-assignment provision within the contract, *Sousa v. Zuni Transportation, Inc.*, 286 So. 3d 820 (Fla. 3d DCA 2019). However, Global's allegations remove any doubt that that Essential assigned more than just the right to initiate this lawsuit. Consider the following allegations from the Complaint:

- ¶ 8—"At all relevant times, Global is and was an agent of Essential."
- ¶ 16—"Immediately after FDEM executed PO#1, Essential, working together with its agents, Global and Mr. Kilgore, invested significant time, efforts, and costs to procure the COVID test kits under PO#1."
- ¶ 17—"Essential, working together with its agents, Global and Mr. Kilgore, delivered the 200,000 test kits under PO#1"
- ¶ 23—"Allen Kilgore is a principal and officer of Global. Allen Kilgore is also a principal and officer of A.I. First Alabama, LLC ("AI First"). At all relevant times regarding the matters of this Complaint, Mr. Kilgore, Global, and AI First, working together, were agents of Essential.
- ¶ 31—"Immediately after the 50% payment, Essential, Mr. Kilgore, Global, and AI First, invested significant time, efforts, and costs to procure the COVID test kits under PO#2. To secure the test kits for PO#2, Essential and its agents were required to pay costs up front."
- ¶ 34—"Essential, Global, and Mr. Kilgore offered FDEM any and all discussion necessary to alleviate any concerns."

These allegations leave no doubt that Global is not simply a disinterested third-party who was assigned the right to pursue Essential's claims for breach of contract against FDEM. Rather, the Complaint makes clear that Global was performing duties under the contracts that were the unassignable legal obligations of Essential. The Complaint does not allege that FDEM authorized Essential to assign any rights under the contract, thus FDEM had the discretion to refuse to recognize the assignment or accept the assignment and accept performance by Global. *Cf. Thompson v. Sun Oil Co.,* 185 So. 837, 838-39 (Fla. 1939) (where tenant assigned lease despite

anti-assignment provisions landlord "could either have refused to recognize the assignment of the lease or waive its right to forfeit the lease on account of the assignment and accept the assignee as its tenant."); *see also Abraham K. Kohl, D.C. v. Blue Cross & Blue Shield of Florida, Inc.,* 955 So. 2d 1140, 1143 (Fla. 4th DCA 2007) ("[A]ll contractual rights are assignable unless the contract prohibits the assignment, the contract involves obligations of a personal nature, or public policy dictates against the assignment." (quoting *Classic Concepts, Inc. v. Poland,* 570 So.2d 311, 313 (Fla. 4th DCA 1990))).

In Counts I, I and V, Global asserts claims as an assignee of Essential. *See* Compl. ¶¶ 47 (Count I), 53 (Count II), 75(Count V). Because the assignment was invalid, these counts must be dismissed.

## VIII. ASSUMING NORTH CAROLINA LAW APPLIES, THE CONTRACT WAS ILLUSORY, AND COUNTS II–VII MUST BE DISMISSED

Plaintiffs do not allege the existence of a valid contract regarding PO#2. A valid contract requires an offer, acceptance, and consideration. Plaintiffs have alleged an offer—they allege that "FDEM responded to and confirmed the agreement to purchase 400,000 additional test kits pending the payment of the 50% invoice." Compl. ¶ 26. Plaintiffs also allege consideration—they allege that "on March 25, 2020, FDEM wired $2,200,000 to Essential for the 50% immediate down payment under PO#2." Compl. ¶ 28. What plaintiffs fail to allege is acceptance.

Paragraph 4 of Essential's Terms and Conditions states:

ACCEPTANCE. No order is binding on Seller unless the applicable Purchase Order is signed by Seller or Seller accepts the order by shipping the Products. Seller may at any time, without notice, change or suspend credit terms, stop shipment or cancel unfilled purchase orders . . .

ECF No. 1-4 at 8. By these terms, acceptance did not occur—and thus no contract was formed— until Essential shipped the 400,000 test kits to fulfil that order. This is a typical unilateral contract.

*S. Power Co. v. Cleveland Cnty.*, 24 F.4th 258, 263 (4th Cir. 2022) ("[T]he defining feature of a unilateral contract is that 'it is accepted by performance,' rather than a promise to perform.") (quoting *White v. Hugh Chatham Mem. Hosp., Inc.*, 97 N.C.App. 130, 387 S.E.2d 80, 81 (1990); *see also Wray v. City of Greensboro*, 787 S.E.2d 433, 437 (N.C. Ct. App. 2016), aff'd, 370 N.C. 41, 802 S.E.2d 894 (2017) ("A unilateral contract is one where the offeror is the master of the offer and can withdraw it at any time before it is accepted by performance. While the offer is outstanding, the offeree can accept by meeting its conditions." (citation omitted)).

Should the court determine that Essential's terms and conditions apply to PO#2, it should further find PO#2 amounted to nothing more than an offer, which Essential had the option of either accepting by shipping the product or signing the purchase order. The purchase order Plaintiffs allege forms the basis of PO#2 is signed by FDEM, but not by Essential. ECF No. 1-2 at 3, ¶ 4. The Complaint contains no allegations that either Essential, Global, Kilgore, or AI First accepted PO#2 by shipping 400,000 test kits to FDEM. As such, PO#2 amounts to an illusory contract that imposed no obligations on Plaintiffs and therefore is not binding on FDEM. Any claims based on this illusory contract (Count II–VII) must be dismissed.

## IX. PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THE EXISTENCE OF AN ENFORCEABLE CONTRACT WITH ALLEN KILGORE OR AI FIRST

As to PO#2, Plaintiffs attempt to cobble together an unsigned (and internally contradictory) purchase order, various email communications (that on their face have no relation to either Global or Essential), and documentation of a wire transfer to support its allegation that there was second binding agreement between FDEM and either Kilgore or AI First. *See* Compl. ¶¶ 26–28. But the unsigned purchase order and email communications—even when viewed in the light most favorable to Kilgore and AI First—do not indicate that an agreement was ever reached. And they

certainly do not show that FDEM agreed to be bound exclusively by Essential's unilaterally imposed terms and conditions.

As shown by the attachments to the Complaint, if PO#2 was ever an enforceable contract, the only parties to it were Essential and DEM. The "communications and confirmations" Plaintiffs rely on to establish PO#2 are attached to the Complaint as Exhibit D. *See* Compl. ¶ 26. The first page of that exhibit contains an email from FDEM's legislative affairs director Jared Rosenstein to Allen Kilgore stating, "let's talk swabs–we already purchased some from you correct?" ECF No. 1-4 at 2. This was a clear reference to PO#1 and an indication that FDEM was interested in contracting with Essential—not Kilgore and not AI First. Further proof can be found in that same attachment. ECF No. 1-4 at 4. The attachment contains an email from Allen Kilgore to Jared Rosenstein stating, "I've attached the new PO for swabs." *Id.* The attached purchase order for 400,000 test kits at a total of $4,400,000 is made out on Essential letterhead and states that "this purchase order is made by and between [FDEM] and Essential Diagnostics, LLC ("Seller")." This is a clear indication that Kilgore also understood that he was negotiating on behalf of Essential and not on behalf of himself or AI First. No other exhibit or allegation in the complaint supports the conclusion the FDEM had any biding contract with either Kilgore or AI First.

Plaintiffs allege "upon information and belief" that FDEM has suggested that it contracted with Kilgore or AI First and not with Essential. *See, e.g.*, Compl. ¶ 60; cf. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (finding a complaint insufficient even though it stated, "Plaintiffs allege *upon information and belief* that [defendants] have entered into a contract, combination or conspiracy to prevent competitive entry . . ." (emphasis added)). The attachments to the Complaint belie any allegation that FDEM entered into a contract with Kilgore or AI First.

Thus, any cause of action brought by Allen Kilgore or AI First fails to plausibly state a claim. Those Counts (Counts III, IV, VI, and VII) should be dismissed.

**CONCLUSION**

WHEREFORE, FDEM respectfully requests this Court dismiss based on FDEM's entitlement to sovereign immunity, for lack of personal jurisdiction and improper venue, Alternatively, the Court should dismiss the Complaint because Plaintiffs fail to state a claim in any of their seven counts. If the Court chooses not to dismiss, FDEM respectfully requests the transfer of venue to the Northern District of Florida, Tallahassee Division, for the reasons set forth above.

Respectfully submitted on March 9, 2023.

*/s/ Ashley Hoffman Lukis*
*George T. Levesque (FBN 555541)
Stephen K. Varnell (FBN 1004236)
Ashley Hoffman Lukis (FBN 106391)
GrayRobinson, P.A.
Post Office Box 11189
Tallahassee, Florida 32302-3189
Telephone: 850-577-9090
Facsimile: 850-577-3311
george.levesque@gray-robinson.com
stephen.varnell@gray-robinson.com
ashley.lukis@gray-robinson.com
*Attorneys for*
*State of Florida, Division of Emergency Management*
*Special Appearance Forthcoming

/s/ Neil Riemann
PENRY|RIEMANN PLLC
2245 Gateway Access Point, Suite 203
Raleigh, NC 27607
919-792-3892
Fax: 919-516-0880
neil.riemann@penryriemann.com
North Carolina Bar No. 19258
*Local Civil Rule 83.1(d) Counsel for*
*State of Florida, Division of Emergency Management*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 9, 2023, a true and correct copy of the foregoing was electronically filed by CM/ECF electronic filing to the Clerk of Court, which will send an electronic notification to all other counsel of record.

/s/ *Ashley Hoffman Lukis*
Ashley Hoffman Lukis (FBN 106391)