# EXHIBIT A

# Florida State Court Complaint

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

GLOBAL INNOVATIVE
CONCEPTS, LLC,                                          CASE NO.    2022 CA 001160

    Plaintiff,

v.

STATE OF FLORIDA, DIVISION
OF EMERGENCY MANAGEMENT,

    Defendant.

_____/

## **COMPLAINT**

Plaintiff, GLOBAL INNOVATIVE CONCEPTS, LLC, files this Complaint against Defendant, STATE OF FLORIDA, DIVISION OF EMERGENCY MANAGEMENT, and states:

## **PARTIES, VENUE, & JURISDICTION**

1.    This is an action for damages that exceeds the sum of FOUR MILLION DOLLARS ($4,000,000.00), exclusive of costs, interest and attorneys' fees.

2.    Plaintiff, Global Innovative Concepts, LLC ("Global"), is an Alabama corporation that conducts business in Florida.

3.    Defendant, State of Florida, Division of Emergency Management ("DEM") is headquartered and located in Leon County, Florida.

4.    This Court has jurisdiction over this action because DEM is located in Leon County, Florida, and the parties entered into agreements that were to be performed in Leon County, Florida.

5.    Venue and jurisdiction are also proper in Leon County, Florida, because the causes of action accrued in Leon County, Florida.

6.    At all relevant times, Global is and was an agent of Essential Health Solutions, Inc. and Essential Diagnostics, LLC (collectively "Essential").  Essential has assigned all interests and claims in this matter to Global.  The Assignment of Claims is attached here as Exhibit "A."

## GENERAL ALLEGATIONS

7.    On March 22, 2020, DEM agreed to purchase 200,000 COVID viral sample collection kits from Essential Diagnostics, LLC, for $2,200,000.  The total purchase amount was due within 45 days upon delivery of the test kits.  Essential Diagnostic's Purchase Order form was executed by Kevin Guthrie on behalf of Jared Moskowitz, Director of DEM.  The Purchase Order and agreed terms executed by Mr. Moskowitz are attached here as Exhibit "B."  This agreement is referred to as PO#1.

8.    Two days later, on March 24, 2020, Mr. Moskowitz and Jared Rosenstein, Legal Affairs Director, DEM, requested more test kits from Global.  In response, Global offered to provide an additional 400,000 COVID viral sample collection kits for $4,400,000.  Global sent DEM a purchase order and terms similar to the ones DEM had just executed under PO#1 (two days earlier).  For this offer, Global requested that DEM pay half of the total invoice up front ($2,200,000), with the remainder due within 45 days of delivery of the test kits.  DEM's request and Global's proposal is attached here as Exhibit "C."

9.    On the same day, in response to Global's offer, Mr. Rosenstein confirmed the agreement to purchase 400,000 additional test kits pending the payment of 50% of the invoice - $2,200,000.  At the same time, Jared Moskowitz issued a signed letter on DEM letterhead confirming the agreement and the immediate payment of $2,200,000 for 400,000 test kits, with the remaining 50% due within 45 days of delivery.  The following day, on March 25, 2020,

DEM wired $2,200,000 to Essential. This agreement is referred to as PO#2. The confirmation emails, confirmation letter, and wire payment are attached here collectively as Exhibit "D."

10. Immediately after the binding agreements for PO#1 and PO#2 were confirmed, Global and Essential invested significant time, efforts, and costs to procure the test kits under these agreements. On April 3, 2020, Global delivered the 200,000 test kits under PO#1 to DEM. Pursuant to the terms of PO#1, DEM was obligated to pay the total purchase amount of $2,200,000 within 45 days. To date, DEM has failed to make this payment.

11. On April 5, 2020, Jared Rosenstein sent an email to Global, Essential, and other DEM personnel, attempting to summarize the PO#1 and PO#2 transactions. First, he confirmed that that the 200,000 PO#1 test kits had been received, had been vetted and cleared by Florida State University Laboratories, and had been vetted and cleared by "FLDOH."

12. Mr. Rosenstein then attempted to change DEM's position and alter the parties' prior agreements and terms regarding PO#1 and PO#2. In the email, Mr. Rosenstein claimed that (1) the DEM's March 25, 2020, wired payment of $2,200,000 was for PO#1, and (2) that the remaining $4,400,000 purchase order for 400,000 test kits still needed to be finalized. These claims were flat-out incorrect, misrepresentations, and were clearly contradicted by the agreements, documents, and email exchanges highlighted above between March 22, 2020, and March 25, 2020. Mr. Rosenstein's email is attached here as Exhibit "E."

13. DEM's March 25, 2020, wired payment was indisputably the 50% required down payment for PO#2.

14. On or about April 16, 2020, the 400,000 test kits for PO#2 had cleared United States Customs and were on route to be delivered to Florida. On the same day, Stephanie Twomey, Agency Clerk, DEM, sent an email to Global and Essential attempting to terminate

PO#2.

15.     In response, Global and Essential provided documentation from a Scientific Director at Quest Diagnostics that the test kits met and exceeded their standards for these products and the standards for Quest labs to accept the kits.  Global and Essential offered DEM direct communication and discussion with Quest and LabCorp to alleviate any concerns.  In addition, Global and Essential provided confirmation to DEM that other labs were administering these COVID testing kits in Florida, had the capacity to use these test kits, and would accept these test kits.

16.     DEM refused to accept the 400,000 test kits under PO#2, and has refused to pay the remaining $2,200,000 owed under PO#2.

17.     The only written terms executed by the parties stated, "Accepted purchase orders cannot be cancelled or rescheduled."

18.     Global exhausted significant costs, work, and effort to procure the test kits, as ordered by DEM.  It was able to secure a much-needed product during the peak of COVID test demands, and it did so relying on DEM's promise to uphold its end of the bargain.  As a result of DEM's failure to pay, Global suffered damages.

19.     On or about March 25, 2021, and April 18, 2022, Global sent written demand letters to DEM, c/o Stephanie Stachowicz, Esq. – DEM in-house counsel, notifying DEM of the legal disputes and requesting payment of the funds owed.  DEM has failed to pay.

20.     Global performed all of its duties and obligations under PO#1 and PO#2, to the extent possible, and/or that was not prevented or hindered by DEM.  At all times, Global remained willing and able to deliver the additional 400,000 test kits under PO#2.  All conditions precedent to the maintenance of this action have been performed, excused or waived.

21.     Global has retained the law firm of Morgan & Morgan, P.A. to prosecute its interests in this matter, and is obligated to pay the firm a reasonable attorneys' fee for its services.

## Count I
### (Breach of Contract – PO#1)

22.     Plaintiff realleges, incorporates, and asserts by reference the allegations set forth in Paragraphs 1 through 21, above.

23.     This is a cause of action against DEM for breach of contract under PO#1.

24.     The parties' execution of the Purchase Order on March 22, 2020, created a valid, binding agreement for PO#1.

25.     Upon delivery of the 200,000 test kits on April 3, 2020, DEM was obligated to pay $2,200,000 within 45 days.

26.     DEM materially breached the PO#1 agreement by failing to pay the funds owed.

27.     As a result of DEM's breach of the agreement, Global has suffered damages.

WHEREFORE, Plaintiff, Global, demands judgment against Defendant, DEM, for damages, costs, interest, and such other and further relief as the Court deems just and proper.

## Count II
### (Breach of Contract – PO#2)

28.     Plaintiff realleges, incorporates, and asserts by reference the allegations set forth in Paragraphs 1 through 21, above.

29.     This is a cause of action against DEM for breach of contract under PO#2.

30.     The confirmation emails, confirmation letter, and DEM's wired 50% down payment on March 25, 2020, created a valid, binding agreement for PO#2, for $4,400,000.

31. On or about April 16, 2020, Global attempted to complete performance of the agreement and deliver the additional 400,000 test kits.

32. DEM materially breached the PO#2 agreement by failing to accept delivery of the test kits and failing to pay the remaining $2,200,000 owed under PO#2.

33. As a result of DEM's breach of the agreement, Global has suffered damages.

WHEREFORE, Plaintiff, Global, demands judgment against Defendant, DEM, for damages, costs, interest, and such other and further relief as the Court deems just and proper.

<u>**Count III**</u>
**(Breach of Implied Contract – PO#2)**

34. Plaintiff realleges, incorporates, and asserts by reference the allegations set forth in Paragraphs 1 through 21, above.

35. This is a cause of action against DEM for breach of implied contract under PO#2, in the alternative to Count II.

36. Based on the conduct of the parties, Global and DEM entered into a contract for PO#2.

37. The parties' conduct was intentional, and each knows, or under the circumstances should know, that the other party understood the conduct as creating a contract.

38. Global secured an order for 400,000 test kits for DEM, understanding that Global would be paid the remaining $2,200,000.00 compensation for the test kits.

39. DEM paid Global 50% up-front compensation required for PO#2.

40. The confirmation emails, confirmation letter, and DEM's wired 50% down payment on March 25, 2020, created a valid, binding agreement for PO#2, for $4,400,000.

41. DEM knew, or under the circumstances should have known, that Global secured the additional 400,000 test kits with the understanding and under the expectation that Global would be paid.

42. Global secured the test kits for DEM and was ready, willing, and able to deliver the test kits.

43. DEM did not pay Global the remaining compensation owed under PO#2.

44. DEM materially breached PO#2 by failing to pay Global.

45. As a direct and proximate result of DEM's breaches of the contract, Global has suffered damages.

WHEREFORE, Plaintiff, Global, demands judgment against Defendant, DEM, for damages, costs, interest, and such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.


Dated:  July 6, 2022

**MORGAN & MORGAN, P.A.**
*Business Trial Group*

*/s/  Thomas S. Cargill*
**Thomas S. Cargill**
Florida Bar No. 0061430
20 N. Orange Ave, Suite 1600
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile: (407) 245-3337
TCargill@forthepeople.com
VWhitaker@forthepeople.com
*Attorney for Plaintiff*

# EXHIBIT A

## ASSIGNMENT OF CLAIMS

This Assignment of Claims is entered between Essential Diagnostics, LLC, and Essential Health Solutions, Inc. (collectively "Essential") on the one hand, and Global Innovative Concepts, LLC ("Global") on the other hand, on this 6th day of April 2022.

Whereas, Essential may have claims against the State of Florida and/or Florida's Division of Emergency Management (hereinafter "Florida") for Florida's breach of two agreements, entered on or around March 24, 2020, to purchase 200,000 and 400,000 (respectively) COVID rapid test kits from Essential, through its agent, Global (the "Purchase Transactions").

Whereas, Essential and Global have entered into mutually acceptable settlement terms and, as part of the consideration for such terms, Essential is assigning to Global all of Essential's rights and interests in potential claims against Florida regarding the Purchase Transactions.

Now, therefore, in consideration of the above actions and terms, the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Global and Essential do covenant and agree as follows:

1. To the extent that Essential possesses or holds any legal causes of action or legal claims against Florida relating to the Purchase Transactions:

    a. Essential hereby assigns any and all causes of actions that Essential has against Florida, to Global;

    b. Global is appointed and deemed an agent of Essential, and is otherwise authorized by Essential, for the purposes of pursuing any legal causes of action against Florida or the recovery of any other cost related to PPE production or freight forwarding and logistics, and has been granted full authority to act for Essential, to pursue such causes of action and claims;

    c. These assignment(s) and appointment(s) are effective as of April 6, 2022 and are ratified and approved as of the date of this written action.

The undersigned hereby approves and adopts these resolutions by written consent as authorized under law.

IN WITNESS WHEREOF, Essential has executed this Assignment as of the date set forth.

ASSIGNORS:

Essential Diagnostics, LLC

James A. Klein, Jr.

Its: CFO          Date: April 6, 2022

**Essential Health Solutions, Inc.**

*Timothy A. Spaeder*

Timothy A. Spaeder

Its: President   Date: April 7, 2022

# EXHIBIT B



**ESSENTIAL HEALTH**
**SOLUTIONS**

# Purchase Order

**Essential Diagnostics, LLC.**
**2011 Falls Valley Drive, Suite 102,**
**Raleigh, NC 27615**

**DATE: March 22, 2020**

**BUYER: State of Florida**

**ADDRESS: 2555 Shumard Oak Blvd, Tallahassee, FL 32399-2100**

**PHONE: 850-815-4000**

**C/O: Jared Moskowitz, Director of Florida's Division of Emergency Management**

**EMAIL:jared.moskowitz@em.myflorida.com**

This Purchase Order is made by and between the Buyer (as indicated above) and Essential Diagnostics, LLC ("Seller"), whereby the Buyer agrees to buy, and the Seller agrees to sell the products ("Products") as indicated below, provided that both the Buyer and Seller agree that the terms of the sale set forth in this Purchase Order are subject in its entirety to the Terms and Conditions of Sale attached hereto as Exhibit A.

## PRODUCTS

| Products and Specification | Quantity | Unit Price | Total Amount |
|---|---|---|---|
| Viral Sample Collection Kit | 200,000 | $11.00 | $2,200,000 |
| UTM – Universal Transport Medium | | USD | USD |

*Seller's Wiring Instructions:*

| | |
|---|---|
| Receiver Bank Name | CapStar Bank |
| Receiver Bank Address | 201 Fourth Ave N, Suite 950 |
| | Nashville, TN 37219 |
| Receiver Bank ABA Number | 064009380 |
| Beneficiary Account Name | Essential Diagnostics, LLC |
| Beneficiary Account Address | 2011 Falls Valley Drive, Suite 102 |
| | Raleigh, NC 27615 |
| Beneficiary Account Number | |

*Payment Terms:* Buyer shall pay 100% of the Total Amount due within 45 days upon delivery of Products under this Purchase Order by Seller.



**ESSENTIAL HEALTH**
**SOLUTIONS**

IN WITNESS WHEREOF, this Purchase Order is executed by a duly authorized representative of Buyer as of the date written above.

BUYER: _KEVIN GUTHRIE_

By: _____

Name: <u>Jared Moskowitz</u>

Title: <u>Director, Florida's Div. of Emergency Mgt.</u>

Purchase Order accepted and agreed by Seller.

**Essential Diagnostics, LLC.**

By: _____

Name: <u>Corey DeHaven</u>

Title: <u>CEO</u>

984-212-4216
2011 Falls Valley Drive, Suite #102
Raleigh, NC 27615

www.TheHHsolutions.com



ESSENTIAL HEALTH
SOLUTIONS

**EXHIBIT A**
**ESSENTIAL DIAGNOSTICS, LLC.**
**TERMS AND CONDITIONS OF SALE**

1 GENERAL. These Terms and Conditions of Sale and the Purchase Agreement (collectively, the "Agreement") are entered into between Buyer and Essential Diagnostics, LLC ("Seller"), and govern the sale of all Seller's products (the "Products") to Buyer. Any terms proposed by Buyer, which add to, vary from, or conflict with the terms of the Agreement shall be void, and the terms of the Agreement shall govern. If a quote or invoice has been issued by Seller in response to an offer the terms of which are additional to or different from any of the provisions hereof, then the issuance of such quote or invoice by Seller shall constitute an acceptance of such offer subject to the express condition that Buyer assent that the Agreement constitutes the entire agreement between Buyer and Seller with respect to the subject matter hereof and the subject of such offer.

2. PRICES All prices are in United States Dollars and exclude all related federal, state, municipal or other government excise, sales, use, occupational or like taxes and import or export, customs, value-added or similar taxes, duties, tariffs, and charges("Tax") now in force or enacted in the future. All Taxes shall be payable by Buyer, unless Buyer presents Seller with a proper certificate of exemption from such Tax. If Seller is required to pay any such Taxes at the time of sale or thereafter, Buyer shall promptly reimburse Seller such amount. Prices exclude shipping and handling, which shall be paid by Buyer All prices are subject to adjustment necessitated by shortages of raw goods or Seller's compliance with any government action.

3. TERMS Unless otherwise specified on the Purchase Order, and subject to credit approval, the terms of payment are as follows: 50% of the Total Amount due under the Purchase Order shall be due and payable upon delivery of the Purchase Order and acceptance by Seller in accordance with the terms hereof, and all remaining amounts due under the Purchase Order shall be due and payable immediately upon delivery of the Products to Buyer. Payment to Seller shall be made via ACH or wire transfer to the Seller's bank and instructions provided in the Purchase Order. Invoices not paid shall be subject to a service charge of 1-1/4% per month on the past due amount. Without limiting the above provisions, in the event Buyer does not pay all amounts due and owing within allowed payment terms, Seller may withhold current or future shipments until acceptable payment is made. Shipment holds shall not constitute Seller's breach and Seller, in its sole discretion, may continue to perform in accordance to Buyer's purchase orders. Seller reserves the right to require prepayment for all orders. Any Letter of Credit or Bank Guaranty requested by Buyer shall be provided at Buyer's sole expense, and Buyer will reimburse Seller's reasonable attorneys' fees in connection with the negotiation, preparation and delivery of the same.

4. ACCEPTANCE No order is binding on Seller unless the applicable Purchase Order is signed by Seller or Seller accepts the order by shipping the Products. Seller may at any time, without notice, change or suspend credit terms, stop shipment or cancel unfilled purchase orders when, in Seller's sole discretion, the financial condition of Buyer or its account so warrants, or when delivery is delayed through any fault of Buyer, or when Buyer is delinquent on any payment for invoiced Products or services.

5. DELIVERY AND DELAYS. Unless otherwise specified, delivery will be F.O.B. Seller's place of shipment (which shall be Raleigh Durham, USA International Airport, unless otherwise indicated by Seller), and Buyer assumes all responsibility for risk of loss, or damage to, the Products furnished hereunder upon delivery of the Products to the common carrier. Products shall be deemed accepted

by Buyer upon Buyer's receipt thereof. Seller shall have the right to select the means of transportation. Delivery dates quoted by Seller are approximate and subject to confirmation.

Unless otherwise specified in the Purchase Order, the Products shall be packed by export-standard protective measures, suitable for long distance ocean/air and inland transportation and meet product storage temperature requirements. Seller shall include with the shipment the invoice, packing list, CE certificate, product manual and air bill of lading. The Seller shall notify the Buyer of Purchase Order number, Product name, quantity, invoice amount, gross weight, B/L number, fight number, departure date, loading port, destination port and estimated arrival date in facsimile or by express within 24 hours after shipment. Delay in delivery by Seller for any shipment shall not relieve Buyer of its obligation to accept remaining installment deliveries. Buyer must make claims for shortages or other errors in delivery in writing to Seller within seven (7) days after Buyer's receipt of shipment and failure to give such written notice shall constitute unqualified acceptance and a waiver of all such claims. Seller shall not be responsible for delays in delivery. If shipping is delayed or interrupted by Buyer directly or indirectly, Buyer shall pay Seller all additional charges resulting there from. Moreover, if as a result of such delay or interruption the Products are not shipped within five (5) days after notification has been made to Buyer that it is ready for shipping, Seller may store the Products at Buyer's risk in a warehouse or upon Seller's premises, and Buyer shall pay all handling, transportation and storage costs at the prevailing commercial rates upon submission of invoices therefore.

6. CANCELLATION. Accepted purchase orders cannot be cancelled or rescheduled.

7. SUBSTITUTES, CHANGES AND IMPROVEMENTS. Modifications that do not affect the form, fit or function of a Product or that Seller deems necessary to comply with changed safety standards or governmental regulations, to make a Product noninfringing with respect to any patent, copyright or other proprietary interest, or to otherwise improve a Product, may be made at any time by Seller without prior notice to or consent of Buyer and such altered Product shall be deemed fully conforming hereunder.

8. EXPORT CONDITIONS. If an export license is required by Seller in order for it to lawfully deliver any Products ordered by Buyer, then the issuance to Seller of all necessary licenses shall constitute a condition precedent to Seller's obligations to sell such Products to Buyer. Buyer agrees to comply with all applicable export laws, regulations and orders. Buyer agrees that it will not resell, re-export, transfer or ship, directly or indirectly, any Products or information provided hereunder, in any form, without obtaining appropriate export or re-export licenses.

9. WARRANTIES. Seller warrants that all Products (excluding data, for which no warranty is made) shall be free in all material respects from defects in workmanship and materials for a period of six months commencing on the date of receipt of the Products by Buyer. The obligation of Seller and Buyer's sole and exclusive remedy hereunder for a breach of the foregoing warranty shall be limited, and at Seller's option shall be: (i) the repair or replacement of any defective Products FOB Seller's place of manufacture; or (ii) a refund of the purchase price paid for the defective Products. In the event Buyer is permitted to return the Product under this Section, it must (i) obtain a Return Materials Authorization number from Seller, (ii) pre-pay shipping charges, and (iii) comply with Seller's then-current return materials procedures. Seller may charge Buyer a service fee and the cost of return shipping for any Product returned

📞 984-212-4216

🏠 2011 Falls Valley Drive, Suite #102
Raleigh, NC 27615

3



which is not covered under the warranty set forth in this Section 9 Seller shall have the right to inspect Products at Buyer's location. Buyer's failure to give notice within seven (7) days upon discovery of any alleged defect or specification inconsistency shall constitute a waiver by Buyer of all claims with respect thereto. Notwithstanding the foregoing warranties and remedies, Seller shall have no obligation hereunder if Products become defective in whole or in part as a result of improper use, alteration, neglect or abuse after having been delivered to Buyer, or for damage resulting from fire, flood or acts of God. Buyer agrees to indemnify Seller against all claims arising out of or resulting from the operation or use of Buyer goods or products that include the Products. EXCEPT AS SET FORTH HEREIN, IT IS EXPRESSLY AGREED THAT THERE IS NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER WARRANTY, EXPRESS, IMPLIED, OR STATUTORY, OR ANY AFFIRMATION OF FACT, OR PROMISES, BY SELLER WITH REFERENCE TO THE PRODUCTS, WHICH EXTENDS BEYOND SELLER'S WRITTEN SPECIFICATIONS FOR THE PRODUCTS. BUYER AGREES THAT IT IS SOLELY RESPONSIBLE FOR ALL DAMAGES, INJURY OR EVEN DEATH THAT MAY RESULT FROM OR BE CAUSED BY USE OF THE PRODUCTS. SELLER AND ITS VENDORS DO NOT GUARANTEE THE QUALITY, ACCURACY OR FITNESS OF ANY DATA OBTAINED BY USING THE PRODUCTS, AND ANY SUCH DATA MUST BE USED AT BUYER'S SOLE RISK. BY USING THE PRODUCTS, BUYER ACKNOWLEDGES AND AGREES THAT IT UNDERSTANDS AND AGREES TO THE TERMS AND CONDITIONS CONTAINED IN THIS DISCLAIMER AND ALL OTHER INSTRUCTIONS, WARNINGS, CAUTIONS AND NOTICES MARKED ON OR PROVIDED WITH THE PRODUCTS. BUYER AGREES NOT TO HOLD SELLER RESPONSIBLE FOR ANY DAMAGES OR OTHER LIABILITIES ARISING FROM BUYER'S USE OF THE PRODUCTS. BUYER AGREES TO INDEMNIFY AND HOLD HARMLESS SELLER AND ITS OFFICERS, INVESTORS, BOARD OF DIRECTORS, EMPLOYEES, CONTRACTORS, VENDORS AND SUPPLIERS FROM ANY AND ALL DAMAGES, JUDGMENTS, LOSSES, CLAIMS, DEMANDS, AND/OR CAUSES OF ACTION ARISING FROM OR RELATED TO BUYER'S USE OF THE PRODUCTS.

10. LIMITATION OF LIABILITY. IN NO EVENT SHALL SELLER OR ITS VENDORS OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, OR AGENTS, BE LIABLE FOR ANTICIPATED OR ACTUAL LOST PROFITS, FOR DAMAGES ON ACCOUNT OF NEGLIGENCE, OR FOR INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES. SELLER'S AGGREGATE LIABILITY FOR ANY CLAIM OF ANY KIND, FOR ANY LOSS OR DAMAGE ARISING OUT OF, CONNECTED WITH, OR RESULTING FROM THE SALE OF PRODUCTS TO BUYER, OR FROM THE DESIGN, MANUFACTURE, SALE, DELIVERY, RESALE, INSPECTION, REPAIR, OPERATION OR USE OF ANY PRODUCTS COVERED BY OR FURNISHED UNDER THIS AGREEMENT, SHALL IN NO CASE EXCEED THE PRICE PAID FOR THE

PRODUCTS THAT GIVE RISE TO THE CLAIM. BUYER MUST MAKE ALL CLAIMS WITHIN ONE YEAR AFTER THE CAUSE OF ACTION HAS ACCRUED WITH RESPECT TO ANY PRODUCTS PROVIDED HEREUNDER.

11. TITLE AND REMEDIES. If Buyer fails to fulfill the terms of payment, Seller may defer further shipments or may, at its option, cancel any unshipped order. Seller reserves the right, previous to making any shipments, to require from Buyer satisfactory security for performance of Buyer's obligations. Until such time as payment in full for all Products provided hereunder is received, Seller reserves, and Buyer grants to Seller, a security interest in any Products provided under the Agreement in order to secure Buyer's obligations of payment for such Products. In the event of default by Buyer on any of its obligations to Seller, Seller will have the right to repossess such Products without liability to Buyer. This Agreement may be filed in appropriate jurisdictions to evidence Seller's security interest in the Products. In addition, Buyer will execute any further documents as Seller may request, and cooperate in filing such documents, in order to evidence Seller's security interest in the Products.

12. MUTUAL NON-DISCLOSURE. All material obtained by Buyer and Seller from the other party during execution and performance of the Purchase Order, including but not limited to all pricing, discounts, operation, partners and technical information, are trade secrets will be considered confidential information. Both parties agree to (a) not disclose such confidential information to any third party, and (b) only use the confidential information for purposes related to the Products. Buyer and Seller agree to indemnify, reimburse, and hold the other party harmless for losses incurred by such party due to breach of this Section 12.

13. CHOICE OF LAW. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of North Carolina, excluding that body of law known as choice of law, and shall be binding upon the parties hereto in the United States and worldwide. All disputes with respect to this Agreement shall be brought and heard either in the North Carolina state courts located in Wake County, North Carolina, or the federal district court for the Eastern District of North Carolina located in Raleigh, North Carolina. The parties to this Agreement each consent to the in personal jurisdiction and venue of such courts.

14. FORCE MAJEURE. Seller will not be liable to Buyer for any delay or failure to deliver Products or otherwise perform under the Purchase Order due to strikes, riots, storms, fires, acts of nature, or any other similar causes beyond the reasonable control of Seller. However, the Seller shall advise the Buyer immediately of such occurrence, and within fourteen days thereafter shall send by airmail to Buyer a certificate issued by the competent government authorities of the place where the accident occurs as evidence thereof. Under such circumstances the Seller, however, shall take all reasonable measures to hasten the delivery of the Products.

15. GENERAL. The failure of Seller to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this contract or to exercise any right hereunder shall not be construed as a waiver or relinquishment of the future performance of any such term, covenant or condition or the future exercise of such rights. This Agreement and any acknowledgement or acceptance of a purchase order by Seller constitute the complete and exclusive statement of the agreement between the parties regarding the subject matter hereof and supersede all proposals, oral or written, and all other communications between the parties relating to the subject matter herein.

4



**ESSENTIAL HEALTH**
**SOLUTIONS**

| Product Name | Part Number | Description | Packaging | Quantity |
|---|---|---|---|---|
| Sample Collection Kit | 43903 | Viral Sample Collection Kit including - 5mL collection tube with2mL preservative;- One cotton pad;- One oral swab with individual package;- User manual;- Three pcs of bar code | Package B: simple packed;1000 sets/case; | 100,000 |
| Sample Collection Kit | 43903 | Viral Sample Collection Kit including - 5mL collection tube with2mL preservative;- One cotton pad;- One oral swab with individual package;- User manual;- Three pcs of bar code | Package A: individual package; 500sets/case | 100,000 |

Packaging A: Individually Packaging
    1 tube +1 cotton pad in a biohazard bag
    10 bags with 10 swabs/Pk.
    500-600 preps/Case



Packaging B: Simply Packaging
    10 tubes + 10 Swabs + 2 cotton pads /Pk.
    1000 Preps/Case



# Purchase Order

| | |
|---|---|
| Agency | Florida Division of Emergency Management |
| Order No. | Covid19-Essential Diagnostics-Mission#4952 |
| Date Issued | 3/22/20     Date Created    3/22/2020 |

## Supplier

| | | |
|---|---|---|
| Name | Essential Diagnostics, LLC | Phone    919-306-0020 |
| Address | 2011 Falls Valley Drive, Suite 102 | Fax |
| City/State/ZIP | Raleigh, NC 27615 | Contact Person    Corey DeHaven |

## Ship To / Bill To

| Ship To | | Bill To | |
|---|---|---|---|
| Entity Name | FDEM | Entity Name | FDEM |
| Address | 2555 Shumard Oak Blvd. | Address | 2555 Shumard Oak Blvd. |
| City/State/ZIP | Tallahassee, FL 32399 | City/State/ZIP | Tallahassee, FL 32399 |

## Deliver To

| | | | |
|---|---|---|---|
| Contact Name | Nick Mayernick | Object Code | |
| Entity Description | | Expansion Option | |
| Organization Code | | Exemption Status | |
| | | Exemption Reason? | |

| Item | Part Number | Unit | Description | Need By | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|
| 200,000 | UTM | | Viral Sample Collection Kit – Universal Transport Medium | | 11.00 | 2,200,000 |
| | | | | | | |

| | | | |
|---|---|---|---|
| Contract ID: | | FOB Code: | |
| Ship to Code: | | Fiscal Year Indicator: | OO |
| Requester Phone: | 850-273-2630 | PO Start Date: | 3/22/2020 |
| Master Agreement: | | PO End Date: | |
| Buyer Code: | NP | PUI #: | 3171 |
| Requester: | Nick Mayernick | SiteCode: | |
| PR No.: | PR11306200 | Encumber Funds: | yes |
| Shipping Method: | | Version: | |
| Purchase Order Type: | | P Card Order: | NA |
| Terms and Conditions: | MFMP, Federal Clauses | Additional Item Info: | |
| Approval : | | Total | $2,200,000.00 |

## Comments

Vendor is not in MFMP. We are issuing this paper PO in order to secure the supplies.

A formal PO will also be issued through MFMP once the venodr is fully registered.

# EXHIBIT C

| | |
|---|---|
| **From:** | Rosenstein, Jared <Jared.Rosenstein@em.myflorida.com> |
| **Sent:** | Tuesday, March 24, 2020 8:43 AM |
| **To:** | allen@ai1al.com |
| **Cc:** | 'Mike Miller'; 'Frank Weir' |
| **Subject:** | RE: [EXTERNAL] State of Florida Swab Test Rapid Test and PPE |

Allen –

Let's talk swabs – we already purchased some from you correct? I believe it was swabs viral medium with a red cap?

You still have access to those? This is a priority.

Jared A. Rosenstein, J.D.
Legislative Affairs Director
Florida Division of Emergency Management
Jared.Rosenstein@em.myflorida.com
Cell: 850-509-3943

**From:** allen@ai1al.com <allen@ai1al.com>
**Sent:** Tuesday, March 24, 2020 7:42 AM
**To:** Rosenstein, Jared <Jared.Rosenstein@em.myflorida.com>
**Cc:** 'Mike Miller' <mmiller375@icloud.com>; 'Frank Weir' <frankmweir@gmail.com>
**Subject:** [EXTERNAL] State of Florida Swab Test Rapid Test and PPE

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning Jared –
Hope you're well. Representative Miller mentioned to me Secretary Moskowitz texted him wanting all we can get from the proposed PO including more Swab Test Kits. Are you looking for a PO like the one attached to meet the need? We should have 100,000 per day capacity on Swab and Rapid Test Kits and 30,000 every two days on Hazmat, so I'll confirm this morning **current product available for you** to ship and report back in a couple hours. We are hoping to get word from Alabama today to send out a C17 from Air National Guard to pick up a large shipment. General Steven Kwast Retired has worked on all the logistics through State Department and Embassy in Shanghai and we have all the flight details ready. I think it would make good sense for both administrations to talk and maybe look at sending out the plane late today to in line with product available to pick up. Please advise and we can help facilitate on our end and maybe some decisions could be made pretty quickly. This could help solve some heavy need in both States.

Sincerely, Allen

Allen Kilgore
*Chief Growth Officer*
**A.I. First Alabama**

1



Under Florida law, correspondence with the Florida Division of Emergency Management, which is neither confidential nor exempt pursuant to Florida Statutes Chapter 119, is a public record made available upon request.

| From: | allen@ai1al.com |
|---|---|
| To: | "Rosenstein, Jared" |
| Cc: | "Mike Miller"; "Frank Weir" |
| Subject: | RE: State of Florida Swab Test Rapid Test and PPE |
| Attachments: | image002.png |
| | EDX Viral Swab Kits PO Florida EM 20200325.pdf |
| | EDX Covid-19 Rapid Test and PPE_PO Florida EM 20200326.pdf |
| | Hazmat_PPE.pdf |
| | Deep Blue igg-igm test.pdf |

Hello Jared –

I've attached the new PO for Swabs. We've verified production at the factory and can get you 400,000 Swab Kits, Red Cap, UTM Media shipped out this week if we can get the PO back quickly. Shipping commercial is exposes the shipment to customs on both ends and time for FedEx or DHL to get it to Orlando. They say 5 days up I think it's 5 to 10 door to door. That gets us back to State of Alabama willingness to have General Kwast facilitate picking up all the product tomorrow and getting it back in the US by Thursday.

Option 1. Commercial Shipping Option 2 Air National Guard Transport

Donna Newman(334-242-4738) answers the phone for Jo Bonner Chief of Staff for Gov Kay Ivey. She has been communicating with Jeff Miller on our end. Jo is a former US Congressman and running point on COVID-19. I'm certain you all know him well. I'd be happy to send you General Steven L Kwast number as well if anyone has any questions. Either or both Governors have the authority to ask them to go wheels up, and as I mentioned to you this morning General Kwast has spoken with the commander of Air National Guard, US State Department and we have all logistics at airport in Shanghai.

Second PO is to confirm with Secretary Moskowitz if he is expecting this product to show up as well. Most of it is already set for shipping, so it will be on the transport but we many need to add more Hazmat Suits. All items within your orders are FDA approved with FDA numbers or FDA approved under all guidance put out for Emergency Use Authorization. The Rapid Test Kits give three readings and detect any virus in the system within two days of exposure and gives you a positive or negative on COVID-19 in 15min. Great for Front line health workers around the state and all the drive through testing spots. You know if the patient has COVI-19 in 15 min while they are onsite not 4 or 5 days later.

Thank you, Allen

**From:** allen@ai1al.com <allen@ai1al.com>
**Sent:** Tuesday, March 24, 2020 6:42 AM
**To:** 'Rosenstein, Jared' <Jared.Rosenstein@em.myflorida.com>
**Cc:** 'Mike Miller' <mmiller375@icloud.com>; 'Frank Weir' <frankmweir@gmail.com>
**Subject:** State of Florida Swab Test Rapid Test and PPE

Good morning Jared –

Hope you're well. Representative Miller mentioned to me Secretary Moskowitz texted him wanting all we can get from the proposed PO including more Swab Test Kits. Are you looking for a PO like the one attached to meet the need? We should have 100,000 per day capacity on Swab and Rapid Test

Kits and 30,000 every two days on Hazmat, so I'll confirm this morning **current product available for you** to ship and report back in a couple hours. We are hoping to get word from Alabama today to send out a C17 from Air National Guard to pick up a large shipment. General Steven Kwast Retired has worked on all the logistics through State Department and Embassy in Shanghai and we have all the flight details ready. I think it would make good sense for both administrations to talk and maybe look at sending out the plane late today to in line with product available to pick up. Please advise and we can help facilitate on our end and maybe some decisions could be made pretty quickly. This could help solve some heavy need in both States.

Sincerely, Allen

**Allen Kilgore**
*Chief Growth Officer*
**A.I. First Alabama**

205.821.7655 m
www.ai1AL.com





ESSENTIAL HEALTH
SOLUTIONS

# Purchase Order

**Essential Diagnostics, LLC.**
**2011 Falls Valley Drive, Suite 102,**
**Raleigh, NC 27615**

**DATE: March 23, 2020**

**BUYER: State of Florida**

**ADDRESS: 2555 Shumard Oak Blvd, Tallahassee, FL 32399-2100**

**PHONE: 850-815-4000**

**C/O: Jared Moskowitz, Director of Florida's Division of Emergency Management**

**EMAIL:jared.moskowitz@em.myflorida.com**

This Purchase Order is made by and between the Buyer (as indicated above) and Essential Diagnostics, LLC ("Seller"), whereby the Buyer agrees to buy, and the Seller agrees to sell the products ("Products") as indicated below, provided that both the Buyer and Seller agree that the terms of the sale set forth in this Purchase Order are subject in its entirety to the Terms and Conditions of Sale attached hereto as Exhibit A.

## PRODUCTS

| Products and Specification | Quantity | Unit Price | Total Amount |
|---|---|---|---|
| Viral Sample Collection Kit | 400,000 | $11.00 | $4,400,000 |
| UTM – Universal Transport Medium | | USD | USD |

### *Seller's Wiring Instructions:*

| | |
|---|---|
| Receiver Bank Name | CapStar Bank |
| Receiver Bank Address | 201 Fourth Ave N, Suite 950 |
| | Nashville, TN 37219 |
| Receiver Bank ABA Number | 064009380 |
| Beneficiary Account Name | Essential Diagnostics, LLC |
| Beneficiary Account Address | 2011 Falls Valley Drive, Suite 102 |
| | Raleigh, NC 27615 |
| Beneficiary Account Number | ▮▮▮▮▮▮ |

*Payment Terms:* Buyer shall pay half of the total invoice amount upon signing the PO for a total of
$2,200,000 and the remaining 50% of the Total Amount due within 45 days upon
delivery of Products under this Purchase Order by Seller. Delivery by commercial
shipping is estimated at 10 days or less from order and payment.



**SOLUTIONS**

IN WITNESS WHEREOF, this Purchase Order is executed by a duly authorized representative of Buyer as of the date written above.

Purchase Order accepted and agreed by Seller.

**BUYER:**

**Essential Diagnostics, LLC.**

By: _____

By: _____

Name: <u>Jared Moskowitz</u>

Name: <u>Corey DeHaven</u>

Title: <u>Director, Florida's Div. of Emergency Mgt</u>.

Title: <u>CEO</u>

984-212-4215

2011 Falls Valley Drive Suite #102
Raleigh, NC 27615

www.e3healthsolutions.com



ESSENTIAL HEALTH
SOLUTIONS

EXHIBIT A
ESSENTIAL DIAGNOSTICS, LLC.
TERMS AND CONDITIONS OF SALE

1. GENERAL These Terms and Conditions of Sale and the Purchase Agreement (collectively, the "Agreement") are entered into between Buyer and Essential Diagnostics, LLC ("Seller"), and govern the sale of all Seller's products (the "Products") to Buyer Any terms proposed by Buyer, which add to, vary from, or conflict with the terms of the Agreement shall be void, and the terms of the Agreement shall govern. If a quote or invoice has been issued by Seller in response to an offer the terms of which are additional to or different from any of the provisions hereof, then the issuance of such quote or invoice by Seller shall constitute an acceptance of such offer subject to the express condition that Buyer assent that the Agreement constitutes the entire agreement between Buyer and Seller with respect to the subject matter hereof and the terms of such offer.

2. PRICES All prices are in United States Dollars and exclude all related federal, state, municipal or other government excise, sales, use, occupational or like taxes and import or export, customs, value-added or similar taxes, duties, tariffs, and charges("Tax") now in force or enacted in the future All Taxes shall be payable by Buyer, unless Buyer presents Seller with a proper certificate of exemption from such Tax. If Seller is required to pay any such Taxes at the time of sale or thereafter, Buyer shall promptly reimburse Seller such amount. Prices exclude shipping and handling, which shall be paid by Buyer All prices are subject to adjustment necessitated by shortages of raw goods or Seller's compliance with any government action

3. TERMS. Unless otherwise specified on the Purchase Order, and subject to credit approval, the terms of payment are as follows 50% of the Total Amount due under the Purchase Order shall be due and payable upon delivery of the Purchase Order and acceptance by Seller in accordance with the terms hereof, and all remaining amounts due under the Purchase Order shall be due and payable immediately upon delivery of the Products to Buyer Payment to Seller shall be made via ACH or wire transfer to the Seller's bank and instructions provided in the Purchase Order Invoices not paid shall be subject to a service charge of 1-1/4% per month on the past due amount. Without limiting the above provisions, in the event Buyer does not pay all amounts due and owing within allowed payment terms, Seller may withhold current or future shipments until acceptable payment is made Shipment holds shall not constitute Seller's breach and Seller, in its sole discretion, may continue to perform in accordance to Buyer's purchase orders Seller reserves the right to require prepayment for all orders. Any Letter of Credit or Bank Guaranty requested by Buyer shall be provided at Buyer's sole expense, and Buyer will reimburse Seller's reasonable attorneys' fees in connection with the negotiation, preparation and delivery of the same

4. ACCEPTANCE. No order is binding on Seller unless the applicable Purchase Order is signed by Seller or Seller accepts the order by shipping the Products. Seller may at any time, without notice, change or suspend credit terms, stop shipment or cancel unfilled purchase orders when, in Seller's sole discretion, the financial condition of Buyer or its account so warrants, or when delivery is delayed through any fault of Buyer, or when Buyer is delinquent on any payment for invoiced Products or services

5. DELIVERY AND DELAYS Unless otherwise specified, delivery will be F.O.B. Seller's place of shipment (which shall be Raleigh Durham, USA International Airport, unless otherwise indicated by Seller), and Buyer assumes all responsibility for risk of loss, or damage to, the Products furnished hereunder upon delivery of the Products to the common carrier. Products shall be deemed accepted

by Buyer upon Buyer's receipt thereof. Seller shall have the right to select the means of transportation. Delivery dates quoted by Seller are approximate and subject to confirmation.

Unless otherwise specified in the Purchase Order, the Products shall be packed by export-standard protective measures, suitable for long distance ocean air and inland transportation and meet product storage temperature requirements. Seller shall include with the shipment the invoice, packing list, CE certificate, product manual and air bill of lading The Seller shall notify the Buyer of Purchase Order number, Product name, quantity, invoice amount, gross weight, B/L number, fight number, departure date, loading port, destination port and estimated arrival date in facsimile or by express within 24 hours after shipment. Delay in delivery by Seller for any shipment shall not relieve Buyer of its obligation to accept remaining installment deliveries. Buyer must make claims for shortages or other errors in delivery in writing to Seller within seven (7) days after Buyer's receipt of shipment and failure to give such written notice shall constitute unqualified acceptance and a waiver of all such claims Seller shall not be responsible for delays in delivery If shipping is delayed or interrupted by Buyer directly or indirectly, Buyer shall pay Seller all additional charges resulting there from Moreover, if as a result of such delay or interruption the Products are not shipped within five (5) days after notification has been made to Buyer that it is ready for shipping, Seller may store the Products at Buyer's risk in a warehouse or upon Seller's premises, and Buyer shall pay all handling, transportation and storage costs at the prevailing commercial rates upon submission of invoices therefore

6. CANCELLATION Accepted purchase orders cannot be cancelled or rescheduled.

7. SUBSTITUTES, CHANGES AND IMPROVEMENTS. Modifications that do not affect the form, fit or function of a Product or that Seller deems necessary to comply with changed safety standards or governmental regulations, to make a Product noninfringing with respect to any patent, copyright or other proprietary interest, or to otherwise improve a Product, may be made at any time by Seller without prior notice to or consent of Buyer and such altered Product shall be deemed fully conforming hereunder

8. EXPORT CONDITIONS If an export license is required by Seller in order for it to lawfully deliver any Products ordered by Buyer, then the issuance to Seller of all necessary licenses shall constitute a condition precedent to Seller's obligations to sell such Products to Buyer Buyer agrees to comply with all applicable export laws, regulations and orders Buyer agrees that it will not resell, re-export, transfer or ship, directly or indirectly, any Products or information provided hereunder, in any form, without obtaining appropriate export or re-export licenses.

9. WARRANTIES Seller warrants that all Products (excluding data, for which no warranty is made) shall be free in all material respects from defects in workmanship and materials for a period of six months commencing on the date of receipt of the Products by Buyer The obligation of Seller and Buyer's sole and exclusive remedy hereunder for a breach of the foregoing warranty shall be limited, and at Seller's option shall be: (i) the repair or replacement of any defective Products FOB Seller's place of manufacture, or (ii) a refund of the purchase price paid for the defective Products. In the event Buyer is permitted to return the Product under this Section, it must (i) obtain a Return Materials Authorization number from Seller, (ii) pre-pay shipping charges, and (iii) comply with Seller's then-current return materials procedures. Seller may charge Buyer a service fee and the cost of return shipping for any Product returned

3



ESSENTIAL HEALTH
SOLUTIONS

which is not covered under the warranty set forth in this Section 9 Seller shall have the right to inspect Products at Buyer's location Buyer's failure to give notice within seven (7) days upon discovery of any alleged defect or specification inconsistency shall constitute a waiver by Buyer of all claims with respect thereto Notwithstanding the foregoing warranties and remedies, Seller shall have no obligation hereunder if Products become defective in whole or in part as a result of improper use, alteration, neglect or abuse after having been delivered to Buyer, or for damage resulting from fire, flood or acts of God. Buyer agrees to indemnify Seller against all claims arising out of or resulting from the operation or use of Buyer goods or products that include the Products. EXCEPT AS SET FORTH HEREIN, IT IS EXPRESSLY AGREED THAT THERE IS NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER WARRANTY, EXPRESS, IMPLIED, OR STATUTORY, OR ANY AFFIRMATION OF FACT, OR PROMISES, BY SELLER WITH REFERENCE TO THE PRODUCTS, WHICH EXTENDS BEYOND SELLER'S WRITTEN SPECIFICATIONS FOR THE PRODUCTS. BUYER AGREES THAT IT IS SOLELY RESPONSIBLE FOR ALL DAMAGES, INJURY OR EVEN DEATH THAT MAY RESULT FROM OR BE CAUSED BY USE OF THE PRODUCTS. SELLER AND ITS VENDORS DO NOT GUARANTEE THE QUALITY, ACCURACY OR FITNESS OF ANY DATA OBTAINED BY USING THE PRODUCTS, AND ANY SUCH DATA MUST BE USED AT BUYER'S SOLE RISK BY USING THE PRODUCTS, BUYER ACKNOWLEDGES AND AGREES THAT IT UNDERSTANDS AND AGREES TO THE TERMS AND CONDITIONS CONTAINED IN THIS DISCLAIMER AND ALL OTHER INSTRUCTIONS, WARNINGS, CAUTIONS AND NOTICES MARKED ON OR PROVIDED WITH THE PRODUCTS. BUYER AGREES NOT TO HOLD SELLER RESPONSIBLE FOR ANY DAMAGES OR OTHER LIABILITIES ARISING FROM BUYER'S USE OF THE PRODUCTS. BUYER AGREES TO INDEMNIFY AND HOLD HARMLESS SELLER AND ITS OFFICERS, INVESTORS, BOARD OF DIRECTORS, EMPLOYEES, CONTRACTORS, VENDORS AND SUPPLIERS FROM ANY AND ALL DAMAGES, JUDGMENTS, LOSSES, CLAIMS, DEMANDS, AND/OR CAUSES OF ACTION ARISING FROM OR RELATED TO BUYER'S USE OF THE PRODUCTS.

10 LIMITATION OF LIABILITY IN NO EVENT SHALL SELLER OR ITS VENDORS OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, OR AGENTS, BE LIABLE FOR ANTICIPATED OR ACTUAL LOST PROFITS, FOR DAMAGES ON ACCOUNT OF NEGLIGENCE, OR FOR INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES. SELLER'S AGGREGATE LIABILITY FOR ANY CLAIM OF ANY KIND, FOR ANY LOSS OR DAMAGE ARISING OUT OF, CONNECTED WITH, OR RESULTING FROM THE SALE OF PRODUCTS TO BUYER, OR FROM THE DESIGN, MANUFACTURE, SALE, DELIVERY, RESALE, INSPECTION, REPAIR, OPERATION OR USE OF ANY PRODUCTS COVERED BY OR FURNISHED UNDER THIS AGREEMENT, SHALL IN NO CASE EXCEED THE PRICE PAID FOR THE

PRODUCTS THAT GIVE RISE TO THE CLAIM. BUYER MUST MAKE ALL CLAIMS WITHIN ONE YEAR AFTER THE CAUSE OF ACTION HAS ACCRUED WITH RESPECT TO ANY PRODUCTS PROVIDED HEREUNDER

11 TITLE AND REMEDIES. If Buyer fails to fulfill the terms of payment. Seller may defer further shipments or may, at its option, cancel any unshipped order. Seller reserves the right, previous to making any shipments, to require from Buyer satisfactory security for performance of Buyer's obligations. Until such time as payment in full for all Products provided hereunder is received, Seller reserves, and Buyer grants to Seller, a security interest in any Products provided under the Agreement in order to secure Buyer's obligations of payment for such Products. In the event of default by Buyer on any of its obligations to Seller, Seller will have the right to repossess such Products without liability to Buyer This Agreement may be filed in appropriate jurisdictions to evidence Seller's security interest in the Products. In addition, Buyer will execute any further documents as Seller may request, and cooperate in filing such documents, in order to evidence Seller's security interest in the Products

12 MUTUAL NON-DISCLOSURE. All material obtained by Buyer and Seller from the other party during execution and performance of the Purchase Order, including but not limited to all pricing, discounts, operation, partners and technical information, are trade secrets will be considered confidential information. Both parties agree to (a) not disclose such confidential information to any third party, and (b) only use the confidential information for purposes related to the Products. Buyer and Seller agree to indemnify, reimburse, and hold the other party harmless for losses incurred by such party due to breach of this Section 12

13 CHOICE OF LAW This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of North Carolina, excluding that body of law known as choice of law, and shall be binding upon the parties hereto in the United States and worldwide. All disputes with respect to this Agreement shall be brought and heard either in the North Carolina state courts located in Wake County, North Carolina, or the federal district court for the Eastern District of North Carolina located in Raleigh, North Carolina. The parties to this Agreement each consent to the in personal jurisdiction and venue of such courts

14 FORCE MAJEURE Seller will not be liable to Buyer for any delay or failure to deliver Products or otherwise perform under the Purchase Order due to strikes, riots, storms, fires, acts of nature, or any other similar causes beyond the reasonable control of Seller However, the Seller shall advise the Buyer immediately of such occurrence, and within fourteen days thereafter shall send by airmail to Buyer a certificate issued by the competent government authorities of the place where the accident occurs as evidence thereof Under such circumstances the Seller, however, shall take all reasonable measures to hasten the delivery of the Products

15 GENERAL The failure of Seller to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this contract or to exercise any right hereunder shall not be construed as a waiver or relinquishment of the future performance of any such term, covenant or condition or the future exercise of such rights This Agreement and any acknowledgement or acceptance of a purchase order by Seller constitute the complete and exclusive statement of the agreement between the parties regarding the subject matter hereof and supersede all proposals, oral or written, and all other communications between the parties relating to the subject matter herein

4

984-212-4218
2011 Falls Valley Drive Suite #102
Raleigh, NC 27615

www.e3healthsolutions.com



ESSENTIAL HEALTH
SOLUTIONS

**EXHIBIT B**
**PRODUCT DESCRIPTION**

| Product Name | Part Number | Description | Packaging | Quantity |
|---|---|---|---|---|
| Sample Collection Kit | 43903 | Viral Sample Collection Kit including - 5mL collection tube with2mL preservative;- One cotton pad;- One oral swab with individual package;- User manual;- Three pcs of bar code | Package B: simple packed;1000 sets/case; | 100,000 |
| Sample Collection Kit | 43903 | Viral Sample Collection Kit including - 5mL collection tube with2mL preservative;- One cotton pad;- One oral swab with individual package;- User manual;- Three pcs of bar code | Package A: individual package; 500sets/case | 100,000 |

Packaging A: Individually Packaging
    1 tube +1 cotton pad in a biohazard bag
    10 bags with 10 swabs/Pk.
    500-600 preps/Case



Packaging B: Simply Packaging
    10 tubes + 10 Swabs + 2 cotton pads /Pk.
    1000 Preps/Case



5

# EXHIBIT D

| | |
|---|---|
| **From:** | allen@ai1al.com |
| **Sent:** | Tuesday, March 24, 2020 5:30 PM |
| **To:** | Rosenstein, Jared; Ingram, Rosalyn; Vaughn, Phyllis |
| **Cc:** | 'Mike Miller'; 'Frank Weir' |
| **Subject:** | [EXTERNAL] RE: [EXTERNAL] RE: State of Florida Swab Test Rapid Test and PPE |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Confirmed.

**From:** Rosenstein, Jared <Jared.Rosenstein@em.myflorida.com>
**Sent:** Tuesday, March 24, 2020 4:15 PM
**To:** allen@ai1al.com; rosalyn ingram <rosalyn.ingram@dms.myflorida.com>; Vaughn, Phyllis <Phyllis.Vaughn@em.myflorida.com>
**Cc:** 'Mike Miller' <mmiller375@icloud.com>; 'Frank Weir' <frankmweir@gmail.com>
**Subject:** RE: [EXTERNAL] RE: State of Florida Swab Test Rapid Test and PPE

Per our conversation:

1. 200k order placed – this is coming along with the new order

2. 400k order pending warrant at 50% of 4.4m – 2.2m

**From Allen: Collection kit with UTM and swabs – delivery Friday/Monday 27th or 30th.**

Please confirm Allen.

Copied on this email is Ros and Phyllis – they will take it from here.

Jared A. Rosenstein, J.D.
Legislative Affairs Director
Florida Division of Emergency Management
Jared.Rosenstein@em.myflorida.com
Cell: 850-509-3943

**From:** allen@ai1al.com <allen@ai1al.com>
**Sent:** Tuesday, March 24, 2020 2:20 PM
**To:** Rosenstein, Jared <Jared.Rosenstein@em.myflorida.com>
**Cc:** 'Mike Miller' <mmiller375@icloud.com>; 'Frank Weir' <frankmweir@gmail.com>
**Subject:** [EXTERNAL] RE: State of Florida Swab Test Rapid Test and PPE

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hello Jared –

I've attached the new PO for Swabs. We've verified production at the factory and can get you 400,000 Swab Kits, Red Cap, UTM Media shipped out this week if we can get the PO back quickly. Shipping commercial is exposes the shipment to customs on both ends and time for FedEx or DHL to get it to Orlando. They say 5 days up I think it's 5 to 10 door to door. That gets us back to State of Alabama willingness to have General Kwast facilitate picking up all the product tomorrow and getting it back in the US by Thursday.

Option 1. Commercial Shipping Option 2 Air National Guard Transport

Donna Newman(334-242-4738) answers the phone for Jo Bonner Chief of Staff for Gov Kay Ivey. She has been communicating with Jeff Miller on our end. Jo is a former US Congressman and running point on COVID-19. I'm certain you all know him well. I'd be happy to send you General Steven L Kwast number as well if anyone has any questions. Either or both Governors have the authority to ask them to go wheels up, and as I mentioned to you this morning General Kwast has spoken with the commander of Air National Guard, US State Department and we have all logistics at airport in Shanghai.

Second PO is to confirm with Secretary Moskowitz if he is expecting this product to show up as well. Most of it is already set for shipping, so it will be on the transport but we many need to add more Hazmat Suits. All items within your orders are FDA approved with FDA numbers or FDA approved under all guidance put out for Emergency Use Authorization. The Rapid Test Kits give three readings and detect any virus in the system within two days of exposure and gives you a positive or negative on COVID-19 in 15min. Great for Front line health workers around the state and all the drive through testing spots. You know if the patient has COVI-19 in 15 min while they are onsite not 4 or 5 days later.

Thank you, Allen

**From:** allen@ai1al.com <allen@ai1al.com>
**Sent:** Tuesday, March 24, 2020 6:42 AM
**To:** 'Rosenstein, Jared' <Jared.Rosenstein@em.myflorida.com>
**Cc:** 'Mike Miller' <mmiller375@icloud.com>; 'Frank Weir' <frankmweir@gmail.com>
**Subject:** State of Florida Swab Test Rapid Test and PPE

Good morning Jared –

Hope you're well. Representative Miller mentioned to me Secretary Moskowitz texted him wanting all we can get from the proposed PO including more Swab Test Kits. Are you looking for a PO like the one attached to meet the need? We should have 100,000 per day capacity on Swab and Rapid Test Kits and 30,000 every two days on Hazmat, so I'll confirm this morning **current product available for you** to ship and report back in a couple hours. We are hoping to get word from Alabama today to send out a C17 from Air National Guard to pick up a large shipment. General Steven Kwast Retired has worked on all the logistics through State Department and Embassy in Shanghai and we have all the flight details ready. I think it would make good sense for both administrations to talk and maybe look at sending out the plane late today to in line with product available to pick up. Please advise and we can help facilitate on our end and maybe some decisions could be made pretty quickly. This could help solve some heavy need in both States.

Sincerely, Allen

Allen Kilgore
*Chief Growth Officer*
**A.I. First Alabama**

205.821.7655 m
www.ai1AL.com



Under Florida law, correspondence with the Florida Division of Emergency Management, which is neither confidential nor exempt pursuant to Florida Statutes Chapter 119, is a public record made available upon request.



## STATE OF FLORIDA
# DIVISION OF EMERGENCY MANAGEMENT

Ron DeSantis
Governor

Jared Moskowitz
Director

Essential Diagnostics, LLC
2011 Falls Valley Drive, Suite #102
Raleigh, North Carolina 27615

Dear Corey DeHaven,

The Florida Division of Emergency Management agrees to process immediate payment for $2.2m of a total purchase for 400,000 Viral Sample Collection Kits totaling $4,400,000. The balance of $2.2m will be processed and paid within 45 days after receipt of the collection kits.

Thank you,

- Jared Moskowitz
  Director
  Florida Division of Emergency Management

DIVISION HEADQUARTERS
2555 Shumard Oak Boulevard
Tallahassee, FL 32399-2100

Telephone: 850-815-4000
www.FloridaDisaster.org

STATE LOGISTICS RESPONSE CENTER
2702 Directors Row
Orlando, FL 32808-5631

# STATE OF FLORIDA
## DEPARTMENT OF FINANCIAL SERVICES
### REMITTANCE ADVICE

| FLAIR ACCOUNT CODE | DLO | SITE | DOCUMENT NUMBER | OBJECT | DATE | PAYMENT NO |
|---|---|---|---|---|---|---|
| | | | | | | 8000010 |

PAYMENT AMOUNT

AGENCY DOCUMENT NO

---

DETACH CAREFULLY AND RETAIN FOR YOUR RECORDS BEFORE CASHING OR DEPOSITING THE WARRANT

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND   CAPITOL BUILDING MUST APPEAR BELOW TO BE AUTHENTIC

| FLAIR ACCOUNT CODE | DOCUMENT NO. | OBJECT | DATE | WARRANT NO | 64 975 |
|---|---|---|---|---|---|
| 31202191001-3170010000-10515300 | CO | 3440 | 03/25/2020 | O-O | 812 |

VOID AFTER 12 MONTHS

## STATE OF FLORIDA
### DEPARTMENT OF FINANCIAL SERVICES

4-29  781  212
AMOUNT

**PAY**

$*********2,200,000.00

TWO MILLION TWO HUNDRED THOUSAND  & 00 /100 dollars

EXPENSE WARRANT

TO THE
ORDER OF   ESSENTIAL DIAGNOSTICS,LLC.

TO: DIVISION OF TREASURY
TALLAHASSEE

WIRED

JIMMY PATRONIS, CHIEF FINANCIAL OFFICER

⑈0480000⑆00⑈

BY ENDORSEMENT HEREOF, the payee guarantees that he is entitled to receive the proceeds of this Warrant. If endorsement is made by mark (X) it must be witnessed by two persons, indicating themselves as witnesses, who can write, giving their place of residence in full.

_____
(SIGN ON THIS LINE)
_____

This Warrant must be endorsed in ink or indelible pencil on the line above by the person in whose favor it is drawn, and the name must be spelled exactly the same as it is on the face of the Warrant.

IDENTIFICATION PROCEDURE

When cashing this warrant for the individual payee, you should require full identification and endorsement in your presence, as claims against endorsers may otherwise result.

# EXHIBIT E



From: Rosenstein, Jared <Jared.Rosenstein@em.myflorida.com>
Sent: Sunday, April 5, 2020 1:30 PM
To: Corey DeHaven <corey.dehaven@e3healthsolutions.com>; 'Frank Weir' <frankmweir@gmail.com>; Mike Miller <mmiller375@icloud.com>; allen@ai1al.com
Cc: Sayler, Erik <Erik.Sayler@em.myflorida.com>; McDaniel, Susanne <Susanne.McDaniel@em.myflorida.com>; Vaughn, Phyllis <Phyllis.Vaughn@em.myflorida.com>; Guthrie, Kevin <Kevin.Guthrie@em.myflorida.com>; Moskowitz, Jared <Jared.Moskowitz@em.myflorida.com>; Coppola, Courtney <Courtney.Coppola@flhealth.gov>; Scheppke, Kenneth A <Kenneth.Scheppke@flhealth.gov>; Chris Spencer (Chris.Spencer@laspbs.state.fl.us)
<Chris.Spencer@laspbs.state.fl.us>; Davis, Ashley <Ashley.Davis@em.myflorida.com>; Bussey, Jon <Jon.Bussey@em.myflorida.com>
Subject: Essential Diagnostics - State of Florida RECAP 4/5/20

Corey, Allen, Mike, Frank, Team FDEM, Team FLDOH:

Wanted to touch base just to level-set on our purchase, as well as a recap on what we have received.

First off, Jim from ClearFreight has been a consummate professional – we appreciated doing business with him.

*See attached for our first tracker – where we confirm two different transactions – our updated tracker is below.*

## The State of Florida has engaged in two transactions:
1. 200k swabs and collection vials (these are red cap vials with documentation from BEAVER Sciences for Life)
   a. This transaction totaled 2.2m
   b. The State of Florida wired 2.2m

1

     c. 200k swabs and collection vials arrived in TLH (4/3/20)

            i. The State engaged in vetting of both the swabs and media – using additional documentation provided by Corey DeHaven

            ii. Swabs cleared by Florida State University Laboratories

            iii. Media cleared by FLDOH SSG Rivkees

2. 400k swabs and collection vials (these are red cap vials with documentation from BEAVER Sciences for Life)
   a. This transaction totaled 4.4m
   b. The State of Florida wired 0
   c. No pending lead time for remaining 400k

**Total transactions: 200k/600k for a total of 2.2/6.6m**

**Outstanding issues:**

1. **The outstanding swabs and collection vials (totaling 400k) need to arrive in TLH before the State finalizes the remaining 4.4m PO.**
2. **The State again needs lead time on when these arrive (I believe Allen told me 100k were arriving within a day or two?)**

Please advise.

- Jared Rosenstein

Jared A. Rosenstein, J.D.
Legislative Affairs Director
Florida Division of Emergency Management
Jared.Rosenstein@em.myflorida.com
Cell: 850-509-3943

Under Florida law, correspondence with the Florida Division of Emergency Management, which is neither confidential nor exempt pursuant to Florida Statutes Chapter 119, is a public record made available upon request.