IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-69-FL

| | |
|---|---|
| GLOBAL INNOVATIVE CONCEPTS, LLC; A.I. FIRST ALABAMA, LLC; and ALLEN KILGORE, </br></br> Plaintiffs/Counterclaim Defendants, </br></br> v. </br></br> STATE OF FLORIDA, DIVISION OF EMERGENCY MANAGEMENT, </br></br> Defendant/Counterclaim Plaintiff. | ORDER |

This matter is before the court on the parties' supplemental briefs following remand from the United States Court of Appeals for the Fourth Circuit (DE 51, 52). The Fourth Circuit left for decision on remand a fact-intensive dispute regarding the contracts at issue, explained in more detail below. The court adopted a consent discovery and briefing schedule from the parties, which produced the instant supplemental briefs. In this posture, the court regards these briefs, which follow a discovery period and rely upon materials produced therein, and address a dispositive question, as motions for summary judgment. For the following reasons, defendant's motion is granted, and plaintiffs' is denied.

**STATEMENT OF THE CASE**

Plaintiffs commenced this action February 15, 2023, with claims arising out of two transactions in 2020 between Essential Diagnostics, LLC ("Essential"), a North Carolina business,

and defendant for the purchase of 600,000 COVID test kits.  Plaintiffs provide in their complaint that Essential assigned its legal claims against defendant to plaintiffs, two Alabama corporations and a resident of Alabama.  Plaintiffs seek damages, costs, and interest.

Defendant moved to dismiss March 9, 2023, on the basis of, inter alia, its Eleventh Amendment sovereign immunity, and in the alternative to transfer venue on grounds that plaintiff Global Innovative Concepts, LLC's ("Global") complaint in Florida state court asserted claims premised upon the same conduct by defendant, the state court's order of dismissal permitting plaintiff time to file an amended complaint, and plaintiff Global's subsequent notice of voluntary dismissal.

On September 21, 2023, this court denied defendant's motion to dismiss.  Defendant filed an interlocutory appeal of the court's ruling on its immunity to suit under the Eleventh Amendment, after which the Fourth Circuit vacated and remanded this court's order.  The Fourth Circuit concluded that this court erred in determining that defendant waived its Eleventh Amendment immunity by the mere entry into the contracts at issue, and remanded for an evaluation of plaintiffs' "fallback argument" that defendant agreed to a forum selection clause specifying this court, and if so, whether that clause sufficed to waive defendant's immunity.  (Fourth Circuit Op. (DE 38) 9); see Glob. Innovative Concepts, LLC v. State of Fla., Div. of Emergency Mgmt., 105 F.4th 139, 144 (4th Cir. 2024).

Following remand, the parties engaged in discovery limited to those questions, and in accordance with a consent briefing schedule, filed supplemental briefs on those two issues.  Said briefing is now complete.  Both sides rely on numerous depositions, pre-suit communications between the parties, and documentation of the parties' transactions.

**STATEMENT OF FACTS**

The facts alleged in plaintiffs' complaint may be summarized as follows.[1] On March 22, 2020, defendant entered into an agreement with Essential for the purchase of 200,000 COVID viral sample collection kits for $2,200,000.00. (Compl. (DE 1) ¶ 10). That agreement was recorded in a purchase form (the "first purchase order"). (Id.).

The first purchase order includes a clause providing that the agreement "shall be governed by and construed and enforced in accordance with the laws of the State of North Carolina" and "[a]ll disputes with respect to [it] shall be brought and heard either in the North Carolina state courts located in Wake County, North Carolina, or the federal district court for the Eastern District of North Carolina[.]" (Id. ¶ 11). It also provides that the "Terms and Conditions of Sale and the Purchase Agreement . . . govern the sale of all Seller's products [] to Buyer" and "[a]ny terms proposed by Buyer, which add to, vary from, or conflict with the terms of the Agreement shall be void, and the terms of the Agreement shall govern." (Id. ¶ 12). Finally, it states:

> This Agreement and any acknowledgement or acceptance of a purchase order by Seller constitute the complete and exclusive statement of the agreement between the parties regarding the subject matter hereof and supersede all proposals, oral or written, and all other communications between the parties relating to the subject matter herein.

(Id. ¶ 14).

Plaintiffs Global, A.I. First Alabama ("AI First"), and Alan Kilgore ("Kilgore"), a principal and officer of both Global and AI First, were agents of Essential. (Id. ¶ 23). Essential, Global, and Kilgore "invested significant time, efforts, and costs to procure the COVID test kits" under the first purchase order, and on April 3, 2020, Essential delivered the 200,000 COVID test

---

[1] The court recounts the facts not contradicted by the parties' evidence in this section only for background purposes, and discusses the facts that are relevant to the legal issues resolved in this order as they become relevant to each issue in turn below.
3

kits to defendant in Tallahassee, Florida. (Id. ¶¶ 16-17). Defendant confirmed receipt of the tests, and that the tests had been "vetted and cleared" by Florida State University Laboratories and by "FLDOH." (Id. ¶ 18). Pursuant to the terms of the signed purchase form, defendant was obliged to pay the total purchase amount of $2,200,000.00 for the first purchase order within 45 days of delivery, or by May 18, 2020. (Id. ¶ 19). Defendant has not made a payment under the first purchase order. (Id.).

On March 24, 2020, two days after signing the first purchase order, defendant contacted Kilgore and requested additional COVID test kits from Essential. (Id. ¶ 22). Kilgore, on behalf of Essential, offered to provide an additional 400,000 test kits for $4,400,000.00. (Id. ¶ 24). Kilgore sent defendant a purchase order with terms identical to those identified in the first purchase order, but with the additional requirement that defendant pay half the total invoice up front with the remainder due within 45 days of delivery (the "second purchase agreement"). (Id. ¶¶ 25, 30). Defendant responded by email expressing interest in "swabs" and thereafter with a signed letter on defendant's letterhead confirming payment of $2,200,000.00 for the purchase of 400,000 testing kits, and providing that the balance of $2,200,000.00 would be paid within 45 days of receipt of the kits. (Exhibit D (DE 1-4); Exhibit E (DE 1-5)).

Plaintiffs again "invested significant time, efforts, and costs to procure the COVID tests" under the second purchase agreement, and by April all 400,000 test kits were ready to be delivered to defendant in Tallahassee, Florida. (Compl. ¶ 31). Around April 16, 2020, however, defendant "attempted to terminate [the second purchase agreement] based upon [defendant's] purported convenience." (Id. ¶ 32). Defendant also thereafter alleged that the test kits delivered under the first purchase agreement were defective, despite earlier confirming that they had been vetted and cleared by Florida State University Laboratories and by "FLDOH." (Id.). Defendant's director of

4

legal affairs also had previously communicated with plaintiffs that he had verified other states were successfully using the same test kits. (Id. ¶ 33). Several labs in Florida likewise were using them. (Id.).

Plaintiffs sought a discussion with defendant to alleviate concerns and provided defendant with confirmation of the successful use of the test kits in Florida. (Id. ¶ 34). Defendant responded that it would provide documentation to support its claims of product deficiencies, but never did. (Id. ¶ 35). Defendant also did not pursue remedies under the product warranties. (Id.).

Defendant ultimately refused to accept delivery of the 400,000 test kits under the second purchase agreement. (Id. ¶ 36). Defendant also declined to pay the remaining $2,200,000.00 owed under it. (Id.). Plaintiffs maintained availability of the test kits in a storage facility in North Carolina. (Id.).

## COURT'S DISCUSSION

A.  Standard of Review

This matter arises in an unusual posture. Defendant successfully appealed the denial of a motion to dismiss under Federal Rule of Civil Procedure 12. However, upon remand the parties engaged in discovery and their supplemental briefs therefore rely upon outside-the-pleadings evidence. Ordinarily, all parties must receive reasonable notice that the court will consider a motion under Rule 56, and a reasonable opportunity to present discovery material. Fed. R. Civ. P. 56(d). However, both parties conducted discovery and rely heavily upon discovery materials, which constitute actual notice that the court will consider these filings as arising under Rule 56. See Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998). The court therefore considers the supplemental briefs as cross-motions for summary judgment on the

issues identified in the Fourth Circuit's opinion, and accordingly considers the parties' evidence under the standard of Rule 56, not Rule 12.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.   Analysis

The parties present multifaceted arguments on whether particular documents and contractual terms constituted the agreement between them. The court concludes that defendant did not agree to plaintiff's forum selection clause. Because no operative forum selection clause specifying federal court exists, no waiver of Eleventh Amendment Immunity occurred, and the court need not reach whether defendant's forum selection clause governed instead, or whether either clause would validly waive immunity. In addition and in the alternative, even if defendant had accepted plaintiffs' forum selection clause, plaintiffs waived its protections through their litigation conduct.

1.   Forum Selection Clause

The United States Supreme Court and Court of Appeals for the Fourth Circuit have emphatically emphasized the importance of Eleventh Amendment immunity as part of the constitutional structure, and the consequent need to enforce it vigorously. Waiver of Eleventh Amendment immunity must "be strictly construed . . . in favor of the sovereign." Sossamon v.

7

Texas, 563 U.S. 277, 285 (2011). Waiver cannot occur through implication or ambiguous language, but must be "unequivocally expressed" through a "clear declaration." Kadel v. N.C. State Health Plan for Teachers & State Employees, 12 F.4th 422, 429 (4th Cir. 2021).

Here, the proposed forum selection clause upon which plaintiff relies does not satisfy this demanding test. The record evidence demonstrates that defendant did not agree to plaintiff's proposed forum selection clause. Rather, it assented to plaintiffs' proposed price point as a basis for later negotiations and contracting, not to any other terms such as plaintiffs' proposed forum selection clause, and it intended to proceed with its own proposed contractual purchase order, which ultimately plaintiffs accepted.

In particular, defendant's employee, Tara Walters ("Walters"), emailed Essential's principal, Corey DeHaven ("DeHaven") to memorialize the parties' transaction, in which Walters attached a "purchase order" and a "signed quote." (Ex. B5 (DE 53-33) 2). Defendant's purchase order expressly referenced its own terms and conditions, and excluded plaintiffs' proposed terms and conditions containing plaintiff's forum selection clause. (See generally id.). Another of defendant's employees confirmed in deposition testimony that defendant viewed documents such as plaintiffs' proposed purchase order as mere price quotes, rather than as contracts offers themselves, because vendors often try to insert their own terms and conditions through such maneuvers, and that defendant's representative's signature thereon reflected only an approval of a proposed price as a basis for subsequent contracting, not assent to a contract in itself. (See Houp Dep. (DE 53-1) 62:14–63:25, 69:11–70:9, 74:19–75:4, 77:12–79:4, 98:11–21 (repeated references to defendant's general policy of treating vendor proposed purchase orders as mere price quotes rather than contract offers)). And after receiving defendant's own purchase order form, plaintiffs did not resist defendant's own terms and conditions or attempt to revive their own. Indeed,

8

plaintiffs registered through My Florida Marketplace ("MFM") as defendant's terms and conditions required. (See Kilgore Dep. (DE 53-28) 39:7–25).

Plaintiffs argue against defendant's point here on grounds that by accepting plaintiffs' purchase order as a contract, defendant became bound to its terms and conditions, despite their physical exclusion from the document that defendant's representative initialed. (See Pl's Resp. Br. (DE 54) 14–15). But this argument rests on a faulty premise. As noted, defendant did not accept plaintiffs' purchase order form as a contract, but rather signaled only that plaintiffs' quoted price was an acceptable basis for subsequent negotiation and contracting.

These circumstances involving a forum selection clause that a state did not accept fall well short of the stringent requirements for waiver of Eleventh Amendment immunity. Accordingly, plaintiffs' claims against defendant must be dismissed due to Eleventh Amendment immunity.

2. Waiver

Defendant argues in the alternative that even if it accepted plaintiffs' forum selection clause, plaintiffs waived their rights thereunder through their litigation conduct. The court agrees.

Although the Fourth Circuit has not addressed whether a party may waive an ordinary contractual forum selection clause by suing in a different forum, district courts within this circuit uniformly agree that such waiver can occur.[2] See, e.g., Kettler Int'l, Inc. v. Starbucks Corp, 55 F. Supp. 3d 839, 849–50 (E.D. Va. 2014) ("[W]hen a party disregards a forum selection clause and sues on a contract in an unauthorized forum, it waives the forum selection clause only for the specific claim it pursues."); DCNSI Sols. LLC v. Landmore Inc., No. 5:19-cv-70, 2020 WL 6830050, at *4 n.2 (W.D. Va. Nov. 20, 2020); see Baird v. Meyers, Roman, Friedberg & Lewis,

---

[2] The Fourth Circuit has very briefly addressed this argument in one case, but only to state that waiver did not occur under the unusual facts of that case. See Bartels ex rel. Bartels v. Saber Healthcare Grp., LLC, 880 F.3d 668, 678 (4th Cir. 2018). Though the Fourth Circuit did not reject defendant's point there, it addressed the issue so briefly that it does not favor either side on defendant's waiver argument.

9

Co., LPA, 700 F. Supp. 3d 249, 262 (E.D. Pa. 2023); Wachovia Bank Nat's Ass'n v. EnCap Gold Holdings, LLC, 690 F. Supp. 2d 311, 328 (S.D.N.Y. 2010). And the Fourth Circuit has held that a party may waive an arbitration clause by litigating in court. See MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 249 (4th Cir. 2001). The court agrees with the well-reasoned district court opinions just cited, bolstered by the Fourth Circuit's parallel treatment of arbitration provisions, and concludes that plaintiffs could have waived the forum selection clause by filing suit in a different forum.

Plaintiffs did so here. They filed suit first in Florida state court nearly a year before doing so in this court on the basis of the same alleged contract containing the forum selection clause. (See Fla. Compl. (DE 14-2)). Yet plaintiffs now insist this court is the only proper venue. Under the above authority, plaintiffs waived the forum selection clause, if it applied, by first filing suit in a plainly unauthorized venue.

Plaintiffs' only response to this argument is that defendant waived any venue defense under Federal Rule of Civil Procedure 12(h)(1)(A). This provision states that a party waives any defense listed in Rule 12(b)(2)–(5) by failing to list it in that party's first Rule 12(b) motion. See Fed. R. Civ. P. 12(h)(1)(A), (g)(2). But defendant's first Rule 12 motion plainly raised venue, under Rule 12(b)(3), as a defense and grounds for dismissal. (Mot. Dismiss (DE 13) 1; Def's Br. Supp. Mot. Dismiss (DE 14) 9–12). This argument is therefore ineffective, and does not disturb the court's conclusion that, even if defendant accepted plaintiffs' forum selection clause, plaintiffs waived their right to enforce it by filing suit first in an unauthorized forum.

**CONCLUSION**

Based on the foregoing, defendant's supplemental brief, which the court construes herein as a motion for summary judgment (DE 51) is GRANTED, and plaintiffs' supplemental brief,

which the court construes herein as a motion for partial summary judgment (DE 52) is DENIED. This case is DISMISSED WITHOUT PREJUDICE pursuant to the Eleventh Amendment. The clerk is DIRECTED to close this case.

SO ORDERED, this the 15th day of July, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge